# EXHIBIT "D"



## MEMORANDUM OF UNDERSTANDING
## BETWEEN THE CITY OF NEW YORK (ACTING THROUGH ITS
## DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES)
## AND
## THE NEW YORK CITY TRANSIT AUTHORITY

The following memorializes the terms of a Memorandum of Understanding ("MOU") between the City of New York, acting through the Commissioner of its Department of Citywide Administrative Services ("DCAS") with offices at One Centre Street, 17th Floor, New York, NY 10007, and the New York City Transit Authority ("NYCTA" or "Transit Authority") with offices at 2 Broadway, New York, NY 10004.

### STATEMENT OF PURPOSE

WHEREAS, the Commissioner of DCAS is empowered by New York City Charter section 814 with the powers and duties of a Municipal Civil Service Commission, as that term is defined in the New York State Civil Service Law; and

WHEREAS, NYCTA is a public authority created by section 1201 of the New York State Public Authorities Law; and

WHEREAS, the New York State Public Authorities Law provides that the appointment, promotion and continuance of employment of all employees of NYCTA shall be governed by the provisions of the Civil Service Law and the rules of the Municipal Civil Service Commission of the City; *to wit*, the Personnel Rules and Regulations of the City of New York; and

WHEREAS, NYCTA has, over time, worked closely with DCAS in the development of civil service examinations for classified civil service titles unique to the NYCTA; and

WHEREAS, NYCTA has experience in developing, administering, and scoring examinations for its subsidiary, the Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA"), which entity is not a civil service employer; and

WHEREAS, DCAS and NYCTA have embarked on an effort to remove NYCTA from the jurisdiction of DCAS with respect to the administration of the New York State Civil Service Law; and

WHEREAS, the drafting, introduction, and passage of any legislation to effectuate such divestiture is expected to take a substantial period of time; and

WHEREAS, NYCTA is prepared to take on greater responsibility with respect to the development, administration, and scoring of civil service examinations for classified competitive class titles unique to NYCTA; and

WHEREAS, this MOU is part of the overall effort by DCAS and NYCTA to

DEFENDANTS 000234

reduce the number of employees appointed provisionally to competitive class titles in the classified civil service and the length of time of such provisional appointments; and

WHEREAS, Section 814 of the New York City Charter provides for delegating certain civil service responsibilities to other agencies; and

WHEREAS, the New York State Public Authorities Law allows for same.

NOW, THEREFORE, DCAS and NYCTA agree as follows:

1.   TERM OF MOU

This MOU shall remain in effect until such time as: (1) legislation is enacted and takes effect which removes NYCTA entirely from the jurisdiction of DCAS with respect to the administration of NYCTA personnel; or (2) either Party chooses to exercise its right to terminate this MOU pursuant to Section 2. herein below, whichever occurs first.

2.   TERMINATION OF MOU FOR CONVENIENCE BY EITHER PARTY

This MOU may be terminated by either Party for its convenience upon sixty (60) days prior written notice to the other Party. In the event of such a termination for convenience, each party shall be deemed to have been restored to its respective status and to have those rights and obligations that existed prior to the effective date of this MOU.

3.   RESPONSIBILITIES OF PARTIES

   A.  NYCTA's Responsibilities:

   i.  NYCTA shall develop, administer, and score competitive civil service examinations for the classified titles appearing in Appendix A (attached hereto as Exhibit 1) as may be necessary in connection with the employment needs of NYCTA. It is understood that said Appendix is subject to amendment by mutual agreement of the Parties from time to time so as to reflect additions or other changes to NYCTA-specific titles;

   ii.  NYCTA shall comply with all requirements set forth in the Protocol Respecting Examination Procedures, Veterans Preference, and Eligible Lists ("Protocol") presently required as attached hereto as Exhibit 2, subject to whatever amendments or changes that may be made by DCAS in its examination and recruitment procedures or in the standards or procedures utilized by DCAS in its General Examination Regulations;

   iii.  NYCTA shall provide DCAS with an eligible list, in a format acceptable to DCAS, for each competitive civil service examination

DEFENDANTS 000235

that NYCTA has developed, administered, and scored, in accordance with the Protocol and all applicable procedural requirements set forth therein;

iv. NYCTA shall provide a written certification with each eligible list provided to DCAS that NYCTA followed all the requirements of this MOU, including the requirements of the Protocol and all applicable procedural requirements set forth therein, in the creation of the eligible list; and

v. NYCTA shall, with respect to those responsibilities not delegated to NYCTA by DCAS under this MOU, and until such time that NYCTA shall have been removed from the jurisdiction of DCAS with respect to administration of the NYS Civil Service Law, comply with all applicable directives, instructions, guidelines and procedures promulgated by DCAS in its capacity as the Municipal Civil Service Commission.

B. DCAS' Responsibilities:

i. Upon receipt of an eligible list from NYCTA, meeting the standards set forth in Paragraph 3.A.iii, *supra*, including the written certification that NYCTA followed all the requirements of this MOU as set forth in Paragraph 3.A.iv, *supra*, DCAS shall establish said list in accordance with standard establishment procedures within sixty (60) days; and

ii. Upon establishment, it shall remain the sole responsibility of DCAS to administer the use of such eligible list in accordance with the Civil Service Law and the Personnel Rules and Regulations of the City of New York.

iii. DCAS shall remain responsible for performing and carrying out all duties and functions provided to the Commissioner of Citywide Administrative Services pursuant to section 814 of the New York City Charter, except as expressly delegated in this MOU to NYCTA.

## 4. MODIFICATION

The Parties may only modify the terms of this MOU in writing, signed by both of the Parties.

## 5. REVIEW AND RETENTION OF RECORDS

Any city, state, or federal auditors, or other investigative authority, who may be entitled to review records pursuant to local, state or federal law, rule or regulation shall have full access to and the right to examine any related financial records and/or reports during the term of this MOU. All records must be retained in compliance with applicable record retention requirements.

DEFENDANTS 000236

## 6.   COMPLIANCE WITH LAWS

Each party shall comply with all applicable city, state and federal laws, rules and regulations with respect to this Agreement and the services to be provided hereunder including, but not limited to, the requirements of the Freedom of Information Law (NYS Public Officers Law § 87 *et seq.*)

## 7.   ENTIRE UNDERSTANDING

This MOU contains all the terms and conditions agreed upon by the Parties hereto, and no other agreement, oral or otherwise, regarding the subject matter of this MOU shall be deemed to exist or to bind any of the Parties hereto, or to vary any of the terms contained herein. The parties, however, agree that this MOU does not affect any other delegations which DCAS has made to NYCTA (e.g., the medical examinations provided for pursuant to Sections 71, 72 and 73 of the Civil Service Law).

## 8.   FILING/APPLICATION FEES

In furtherance of satisfying the requirements of Civil Service Law Section 50(5)(d), NYCTA and DCAS agree to the following process for handling filing/application fees. NYCTA shall accept filing/application fees for all of the examinations it conducts pursuant to this MOU. NYCTA shall then make payment to DCAS on a quarterly basis in the amount of all of the filing/application fees that NYCTA collected during that quarter. Within 30 days of receiving the payment from NYCTA, DCAS shall deposit the payment into the City's general fund to meet its obligation under Civil Service Law Section 50(5)(d) and then issue a refund payment to NYCTA in the same amount.

NYCTA shall comply with all of the requirements set forth in Title 55, Section 11-01 of the Rules of the City of New York entitled "General Examination Regulations," including, but not limited to, the fee schedule set forth therein, the terms and conditions for receipt, and the acceptance of waivers.

## 9.   NO BACK-CHARGES OR OTHER PAYMENTS

The process for handling filing/application fees set forth in Section 8 above shall constitute the only time that funds shall be exchanged between the Parties pursuant to this MOU.

No Party shall back-charge another Party for its services rendered in connection with this MOU. NYCTA shall not make any further payments for any work or services which are provided or may have been provided by DCAS in the past and DCAS may not charge any debts or claims against the refund payments for filing/application fees required in Section 8 above.

DEFENDANTS 000237

## 10.    EFFECTIVE DATE

This Memorandum shall take effect immediately upon execution; however, newly-established responsibilities of each Party, as set forth herein, shall apply only on a prospective basis (i.e., as of such date of execution) and not to any pending matters, unless specifically agreed to in writing by both parties.

IN WITNESS WHEREOF, the Parties have executed this MOU on the dates appearing immediately under the signatures of their respective representatives.

THE CITY OF NEW YORK
DEPARTMENT OF CITYWIDE
ADMINISTRATIVE SERVICES

BY: _____

TITLE:_____Commissioner_____

DATE: _____

THE NEW YORK CITY TRANSIT AUTHORITY

BY: _____

TITLE:____Executive Vice President_____

DATE: ____May 2, 2011_____

DATE  MAY  0 2  2011
APPROVED AS TO FORM
GENERAL COUNSEL
BY _____

DEFENDANTS 000238

Admin. Transit Customer Service Specialist
Asst Train Dispatcher
Asst. Transit Mgmt. Analyst
Asst Transit Mgmt Analyst (Operations)
Associate Cashier (TA)
Associate Railroad Signal Specialist
Associate Railroad Signal Specialist (Operations)
Associate Transit Customer Service Specialist
Associate Transit Management Analyst
Associate Transit Management Analyst (Operations)
Bus Maintainer (A)
Bus Maintainer (B)
Bus Operator (TA)
Bus Maintainer Trainee – Group B
Car Inspector
Car Maintainer – B
Car Maintainer - C
Car Maintainer Trainee
Collecting Agent
Collection Supervisor (Revenue)
Conductor
Dispatcher (Surface Transportation)
Electronic Equip. Mtr.
Light Maintainer
Maintainer Helper (B)
MS – Car Equipment
MS – Electrical Power
MS – Electronic Equipment
MS – Elevator & Escalator
MS – Lighting
MS – Power Cables
MS – Power Distribution
MS - Power Electronics
MS – Revenue
MS – Signals
MS – Stores
MS – Structure (A)
MS – Structure (B)
MS – Structure (C)
MS - Structure (D)
MS – Structure (E)
MS – Structure (F)
MS – Structure (H)
MS – Structure (J)
MS – Surface
MS – Telephones
MS – Track Equipment
MS - Track
MS Ventilation and Drainage
Mechanical Mtr. (C)

Power Cable Mtr
Power Distribution Mtr.
Power Electronic Mtr
Power Electronic Technician
Power Mtr (B)
Principal Transit Management Analyst
Principal Transit Management Analyst (Operations)
Quality Control Specialist
RR Stock Worker
Revenue Equipment Mtr
Road Car Inspector
Senior Quality Control Specialist
Signal Mtr
Signal Mtr Trainee
Station Agent
Structure Mtr (A)
Structure Mtr (B)
Structure Mtr (C)
Structure Mtr (D)
Structure Mtr (E)
Structure Mtr (F)
Structure Mtr (G)
Structure Mtr. (J)
Structure Mtr. Trainee (A)
Structure Mtr. Trainee (B)
Structure Mtr. Trainee (C)
Structure Mtr. Trainee (D)
Structure Mtr. Trainee (E)
Supervising Associate Cashier (Transit Authority)
Supervisor (Stations)
System Safety Specialist
System Safety Specialist (Trainee)
Telephone Mtr
Tower Operator
Track Equipment Mtr
Track Worker
Train Dispatcher
Train Operator
Transit Customer Service Specialist
Train Service Supervisor
Transit Electrical Helper
Transit Electro- Mechanical Mtr
Transit Mgmt Analyst Trainee
Transit Property Protection Agent
Transit Property Protection Supervisor
Transit Railcar Technology Specialist
Transit Railcar Technology Specialist (Operations)
Transit Railcar Technology Specialist Intern

EXHIBIT 2

## PROTOCOL RESPECTING EXAMINATION PROCEDURES, VETERANS PREFERENCE, AND ELIGIBLE LISTS

### SECTION I—GENERAL EXAMINATION PROCEDURES

#### 1.1. Job Analysis.

A job analysis shall be conducted for each examination. If a job analysis has been conducted within the last five years of the anticipated administration of an examination and if it is believed by the Vice President of Human Resources that the job has not significantly changed, the amount of analysis conducted shall be sufficient to determine and document that the job has not significantly changed. (See PRR **4.1.4(a)**)

The Transit Authority shall adhere to the requirements of the Uniform Guidelines on Employee Selection Procedures (1978), and to professional standards as described in the AERA, APA and NCME Standards for Educational and Psychological Testing (1999), and the SIOP Principles for the Validation and Use of Personnel Selection Procedures (2003), as they relate to test development and administration.

#### 1.2. Examination Experts

The Transit Authority may secure outside expert assistance in examinations in such cases as the Transit Authority deems appropriate and necessary. (See PRR **4.1.5**)

#### 1.3. Responsibility for Examination.

(a) Every examination shall be under the direction of the Vice President of Human Resources who shall consult with Transit Authority department heads or their designees concerning the qualifications for the position for which an examination is to be held. (See PRR **4.1.6(a)**)

(b) Such examination shall be free from the influence or participation of any official or employee of Transit Authority or the MTA except those who may be assigned to assist the Vice President of Human Resources, who shall have the sole direction and control of such individuals during the period of such assignments. (See PRR **4.1.6(b)**)

#### 1.4. Test and Weight.

The tests comprising an examination and the relative weight given to each shall be fixed prior to each examination by the Vice President of Human Resources. (See PRR **4.1.7**)

#### 1.5. Preparation of Examinations.

(a) The Vice President of Human Resources shall assign examiners for a particular examination. (See PRR **4.1.8(a)**)

(b) All written questions prepared by such examiners shall be placed in safe compartments provided by the Vice President of Human Resources. Such questions shall be printed from type or other process under the immediate supervision of the Vice President of Human Resources. (See PRR **4.1.8(b)**)

(c) The Vice President of Human Resources shall be responsible for the safekeeping of such questions unless relieved by the Executive Vice President. So far as practicable, such printing shall be done immediately prior to the date of the examination. (See PRR **4.1.8(c)**)

#### 1.6. Announcement.

DEFENDANTS 000240

**EXHIBIT 2**

At least two weeks prior to the beginning of the application filing period for a new examination, Transit Authority shall submit to DCAS an announcement setting forth the title of the position, the minimum qualifications required, the tests of the examination, and such other information as the Transit Authority may deem necessary.  In the case of an examination where minimum requirements, testing formats or other testing elements have changed significantly since the last administration of the examination, the Transit Authority shall submit the announcement to DCAS affording a two week longer lead time prior to the beginning of the application filing period (for a total of four weeks), and shall, upon request by DCAS during such period, provide DCAS with relevant analyses pertaining thereto.  DCAS will place the announcement on the DCAS Commissioner's Calendar.   (See PRR **4.1.9**)

**1.7. Publication.**

Such announcement shall be published by the Transit Authority daily throughout the entire filing period. Where the announcement does not specify a closing date, a filing period shall not be closed without at least three days' notice by publication. Such announcement and list of examinations for which applications are being received shall be posted conspicuously in the offices of the Transit Authority. (See PRR **4.1.10**)

**1.8. Modification.**

The Transit Authority may, after the announcement has been published, subdivide the several tests into subjects or parts. Notice of such action must be given at the time such tests are held. (See PRR **4.1.11**)

**SECTION II--APPLICATIONS AND RECRUITMENT**

**2.1. Application Forms and Completion.**

(a) Application forms for examinations shall be furnished by the Transit Authority without charge to all persons requesting the same. (See PRR **4.2.1(a)**) The Transit Authority may adapt the application used by DCAS; however, any substantial deviation from the DCAS application needs DCAS approval. In addition, the Transit Authority shall also furnish a Special Circumstances form to applicants which may also be adapted by the Transit Authority from DCAS forms.

(b) An applicant shall state upon the prescribed form such information as is required including the applicant's background, experience and qualification for the position sought and merit and fitness for the public service. Applications shall be subscribed by the applicant and shall contain a declaration that the statements are made subject to the penalties of perjury. (See PRR **4.2.1(b)**)

(c) The personal history form or other prescribed form provided in connection with the investigation of an applicant shall be deemed a part of the application. (See PRR **4.2.1(c)**)

(d) Examination applications must be maintained in a manner compatible with DCAS' APPS database.

**2.2. Filing Period.**

Unless otherwise provided in the announcement of the examination, the Transit Authority shall fix the period, to be not less than two weeks, during which applications shall be received. There shall be not less than ten days between the last day for the receipt of applications as originally publicly announced and the date of the first test in an examination unless otherwise provided in the announcement of the examination. (See PRR **4.2.2**)

**2.3. Filing Fees.**

DEFENDANTS 000241

EXHIBIT 2

Filing fees shall be accepted by the Transit Authority on behalf of DCAS for all of the examinations it conducts under this protocol. The amounts of such fees and the terms and conditions for receipt and acceptance and any waivers shall be as set forth in the regulations. (See PRR **4.2.3**)

### 2.4. Non-Return of Applications.

All applications shall be dated. An accepted application shall not be returned to the applicant or the applicant's agent, as the case may be. (See PRR **4.2.4**)

### 2.5. Defective Application.

An application found to be defective shall be suspended. Where an application is found to be incomplete or defective or not accompanied by the proper fee, if any, such application shall not be accepted unless the defect or omission has been corrected by the applicant and returned within seven days from the date of notification to the applicant of the required corrections. (See PRR **4.2.5**)

At the conclusion of the application filing period, the Transit Authority will transmit to DCAS an electronic file with the name, address, social security number and other information contained in the application forms.

### SECTION III--DISQUALIFICATION OF APPLICANTS OR ELIGIBLES

### 3.1. General Provisions.

(a) The Vice President of Human Resources, upon investigation of applicants for positions in the civil service or review of their qualifications, may refuse to examine an applicant or after examination request DCAS to refuse to certify or refuse to permit the certification of an eligible for reasons and in the manner prescribed by law or these rules. (See PRR **4.3.1(a)**)

(b) Investigation of the qualifications and background of an eligible may be made after appointment and, upon finding facts which, if known prior to appointment, would have warranted disqualification, or upon a finding of illegality, irregularity or fraud of a substantial nature in the eligible's application, examination or appointment, the certification of such eligible may be revoked by the Vice President of Human Resources after consultation with the Commissioner of Citywide Administrative Services and the employment directed to be terminated, provided, however, that no such certification shall be revoked or appointment terminated more than three years after it is made, except in the case of fraud. (See PRR **4.3.1(b)**)

(c) No person shall be disqualified by the Vice President of Human Resources unless such person has been given a written statement by the Vice President of Human Resources of the reasons therefore and afforded an opportunity to make an explanation and to submit facts in opposition to such disqualification. (See PRR **4.3.1(c)**)

### 3.2. General Requirements.

(a) An applicant or eligible must possess the established minimum requirements and qualifications for admission to an examination or for appointment to a position. (See PRR **4.3.2(a)**)

(b) Satisfactory character and reputation shall be deemed a part of the established minimum requirements and qualifications for admission to an examination or for appointment to a position. (See PRR **4.3.2(b)**)

(c) Where medical guidelines have been established for a position, a candidate may be examined

DEFENDANTS 000242

EXHIBIT 2

to determine whether he or she can perform the essential functions of the position, with or without reasonable accommodation, to the extent required by applicable law. Where appropriate, a reasonable accommodation will be provided for a person with a disability to enable him or her to take the examination, and/or perform the essential functions of the job. Except as provided in paragraph (d), a determination that a candidate would be unable to perform the essential functions of the position, with or without a reasonable accommodation, shall constitute sufficient grounds for the disqualification of such person.

(d) Where a person on an eligible list does not qualify under paragraph (c) hereof for the position for which the list was established, and where such list is declared appropriate for a position requiring lesser medical and physical standards than those required for the original position, such person shall, upon application during the life of the list, if he or she meets such lesser standards, be qualified for the latter position and shall be certified thereto in his or her regular order on such list. (See PRR **4.3.2(f)**)

(e) Where a person on an eligible list for a title designated as a safety sensitive title by the Transit Authority fails to successfully complete a drug test because of a finding of any prohibited drugs or drug metabolites, as set forth in 49 CFR 655.21, as same may be amended from time to time, or as set forth in the Transit Authority's Drug and Alcohol Policies/Procedures, as same may be revised from time to time, such failure shall constitute sufficient grounds for disqualification.

(f) Any Civil Service Law appeals made to the New York City Civil Service Commission arising from determinations made by the Transit Authority pursuant to this Section III shall be defended by the Transit Authority.  The City shall fully cooperate in such defenses.  In the case of any CPLR Article 78 proceedings with respect to any such determinations by the Transit Authority, the Transit Authority and the City will cooperate with one another in handling and responding to such proceedings.

**3.3. Burden.**

The burden of establishing the required qualifications shall be upon the applicant or eligible. (See PRR **4.3.3**)

**SECTION IV--ADMINISTRATION AND RATING OF EXAMINATIONS**

**4.1. Applicability.**

The provisions of this section shall apply to examinations conducted by the Transit Authority. (See PRR **4.4.1**)

**4.2. Admission to Examination; Identification.**

A candidate shall not be admitted to an examination or any test thereof whose application therefore has not been presented and accepted in accordance with the rules. The name of a candidate who has not been fingerprinted at the time of examination shall not be placed on the eligible list. (See PRR **4.4.2**)

**4.3. Processing of Examination Papers.**

On the day of the examination, the admission cards of the candidates shall be enclosed in an envelope and sealed. In an examination in which the papers are rated in whole or in part by examiners, the identity of each candidate shall remain concealed until the ratings are completed. In an examination in which all procedures from the rating of tests to the production of the list are accomplished entirely by machine, the seal may be broken prior to rating solely to permit verification of mark-sensed application numbers. (See PRR **4.4.3**)

- 4 -

DEFENDANTS 000243

EXHIBIT 2

**4.4. Oral Tests.**

Oral tests, wherever practicable, shall be recorded by a suitable method to provide a reviewable record. (See PRR **4.4.4**)

**4.5. Second or Special Examinations.**

Except as provided in paragraph 4.6 hereof, or as provided in the military law of the State of New York, no candidate shall be given a second or special competitive test in connection with an examination held, unless it be shown to the satisfaction of the Vice President of Human Resources that the candidate's failure to take or complete such test was due to:

(a) A manifest error or mistake for which the Transit Authority is responsible, the nature of which shall be recorded;

(b) Compulsory attendance before a court or other public body or official having the power to compel attendance;

(c) Physical disability incurred during the course of and within the scope of the employment of such candidate with the Transit Authority where such candidate is an officer or employee of the Transit Authority; or

(d) Absence from the test within a period of one week after the date of death of a spouse, mother or father, sister or brother, or child of such candidate where such candidate is an officer or employee of the Transit Authority. No such claim shall be granted unless it is submitted in writing to the Transit Authority either in person or by certified or registered mail within two months following the date of the regular examination. (See PRR **4.4.5**)

**4.6. Religious Observance.**

A candidate claiming to be unable to participate in an examination when originally scheduled because of the candidate's religious beliefs may seek consideration by requesting a special examination by submitting to the Vice President of Human Resources such request in writing either in person or by certified or registered mail no later than fifteen days prior to the date of the examination. A written statement signed by the candidate's religious leader attesting to the candidate's religious beliefs and certifying that a candidate's religious observance prevents the candidate from participating in an examination during its scheduled administration must accompany said written request. (See PRR **4.4.6**)

**4.7. General Rating Procedures.**

Except when otherwise specified by the Vice President of Human Resources, each test, subject or part of an examination shall be rated by not less than two examiners. They, or employees designated by the Vice President of Human Resources, shall then affix to each paper or record a rating expressing the average of their judgment attested by their respective signatures or initials. (See PRR **4.4.7**)

**4.8. General Rating Standards.**

The rating shall be comparative and in accordance with such standards as the needs of the service may require. (See PRR **4.4.8**)

**4.9. Passing Rating.**

(a) Unless otherwise specified by resolution or regulation of the Commissioner of Citywide Administrative Services, or by the announcement of examination, candidates must attain a final

DEFENDANTS 000244

**EXHIBIT 2**

examination rating of not less than seventy percent in an examination in order to be placed upon an eligible list for certification and appointment. The Transit Authority retains the right to adjust the final passing rating within the range of the standard error of measurement. (See PRR **4.4.9(a)**)

(b) The required passing rating in any test, subject or part of an examination shall be fixed not later than the time of the holding thereof or as soon as practicable thereafter by the Vice President of Human Resources. (See PRR **4.4.9(b)**)

(c) Where it is anticipated that the number of eligibles will not meet the needs of the service, the Executive Vice President, in consultation with the Commissioner of Citywide Administrative Services, may, in order to provide an eligible list to meet the needs of the service, authorize the use of any type or combination of types of conversion methods or a mathematical formula of penalties for incorrect answers on the basis of test difficulty and other relevant factors involved in the rating of any test. (See PRR **4.4.9(c)**)

### 4.10. Finality of Rating.

Except as otherwise provided by paragraph 4.13 hereof or by resolution or regulation of the Commissioner of Citywide Administrative Services, no final rating of a test, subject or part of an examination shall be subject to alteration or re-rating. (See PRR **4.4.10**)

### 4.11. Candidates With Same Final Examination Rating.

Whenever two or more candidates in an examination receive the same final examination ratings, their respective place on the resulting eligible list shall be determined for administrative reasons only by a sequence of the number derived from the last five and then the first four positions of their social security numbers. (See PRR **4.4.11**)

### 4.12. Certification and Use of Eligible List Where Paragraph 4.4.11 Has Been Applied.

(a) If the name of any eligible whose place on the eligible list has been determined in accordance with the procedures set forth in paragraph 4.11 is included in the certification for appointment, the names of all other eligibles on the list having the same final examination rating as such eligible shall likewise be included in such certification. (See PRR **4.4.12(a)**)

(b) Appointments and promotions then may be made by the selection of any such eligible whose final examination rating is equal to or higher than the final examination rating of the third highest standing eligible qualified and willing to accept appointment or promotion. (See PRR **4.4.12(b)**)

### 4.13. Correction of Manifest Error or Mistake.

The Vice President of Human Resources, at any time prior to the establishment or during the existence of an eligible list, may correct any manifest error or mistake made in connection with an examination, on the initiative of the Executive Vice President, or in the granting of a claim of manifest error or mistake. Such action shall be taken in accordance with the procedures set forth in rule VIII of these Personnel Rules and Regulations of the City of New York and may result in a higher or lower rating. The nature of such manifest error or mistake shall be recorded. (See PRR **4.4.13**)

### SECTION V--ADDITIONAL CREDIT ON COMPETITIVE EXAMINATIONS FOR VETERANS AND DISABLED VETERANS

### 5.1. Application for Additional Credit.

(a) A veteran or disabled veteran who elects to claim additional credit, as provided in the Civil

- 6 -

DEFENDANTS 000245

**EXHIBIT 2**

Service Law, shall so notify the Vice President of Human Resources and establish by appropriate documentary evidence eligibility for such additional credit. (See PRR **4.5.1(a)**)

(b) No such claim shall be accepted as approved which has not been filed prior to the establishment of the eligible list. However, such timely claim may, prior to appointment, be amended to reflect the disabled or non-disabled veteran status recognized by the Veterans Administration at the time the list was established. (See PRR **4.5.1(b)**)

**5.2. General Procedures.**

(a) Prior to appointment or promotion, as the case may be, a veteran or disabled veteran reached for appointment or promotion on an eligible list by virtue of such additional credits, shall subscribe a statement on a form provided by the Vice President of Human Resources that no permanent original appointment or permanent promotion to a position in the civil service of the state or any civil division or city thereof had previously been obtained as a result of the additional credits prescribed in the Civil Service Law. (See PRR **4.5.2(a)**)

(b) The Vice President of Human Resources shall at the time of appointment require a person appointed by virtue of such additional credits to execute an instrument on a form prescribed by the Vice President of Human Resources, setting forth such person's public employment since January 1, 1951. (See PRR **4.5.2(b)**)

**5.3. Use of Additional Credit.**

(a) A person who has received a permanent original appointment or permanent promotion to a civil service position as a result of additional credit shall not thereafter be entitled to additional credit, either as a veteran or disabled veteran, in any competitive examination for original appointment or promotion. (See PRR **4.5.3(a)**)

(b) The appointment or promotion of a veteran or disabled veteran as a result of additional credits shall be void if such veteran or disabled veteran, prior to such appointment or promotion, had received a permanent original appointment or permanent promotion to a civil service position as a result of additional credits. (See PRR **4.5.3(b)**)

**5.4. Exhaustion of Credits; Exceptions.**

When a veteran or disabled veteran accepts a permanent position from an eligible list by virtue of such additional credits, such person shall be deemed to have exhausted those credits unless:

(a) Prior to the expiration of the probationary term, such veteran or disabled veteran resigns from the position; or

(b) The services of such veteran or disabled veteran are terminated at the end of or during the probationary term; or

(c) At the time of establishment of an eligible list, the position of a veteran or disabled veteran on such list has not been affected by the addition of credits; or

(d) At the time of appointment from an eligible list, a veteran or disabled veteran is in the same relative standing among the eligibles who are willing to accept appointment as if the veteran or disabled veteran had not been granted additional credits. (See PRR **4.5.4**)

**5.5. Withdrawal of Application; Election to Relinquish.**

(a) An application for additional credits may be withdrawn by the applicant in writing at any time prior to the establishment of an eligible list or during its existence and prior to appointment or

DEFENDANTS 000246

EXHIBIT 2

promotion therefrom. In such case, the election shall be irrevocable and the applicant's place on the eligible list shall be revised accordingly. (See PRR **4.5.5(a)**)

(b) Where such election is made in connection with certification to a position for which the list has been declared appropriate other than to the position for which the examination was held, it shall not affect the applicant's standing on the list in respect to the latter position. (See PRR **4.5.5(b)**)

### 5.6. Roster.

There shall be established in the Department of Citywide Administrative Services a roster of all veterans and disabled veterans appointed or promoted as a result of the additional credits granted pursuant to the Civil Service Law. The Transit Authority shall have full access to this roster. (See PRR **4.5.6**)

### 5.7. Disabled Veteran's Records.

All certificates and other documents, memoranda, reports and information furnished by the United States Veterans Administration to the Transit Authority in connection with claims for disabled veterans' preference may be shared with the Department of Citywide Administrative Services, but otherwise shall be deemed confidential unless the Commissioner of Citywide Administrative Services determines that the withholding thereof is contrary to the public interest or is otherwise required by law. (See PRR **4.5.7**)

### SECTION VI--ELIGIBLE LISTS

### 6.1. Establishment of Lists.

(a) The results of each examination shall be reported by the Vice President of Human Resources to DCAS and the names of the candidates passing such examination shall be listed in the order of their respective final examination ratings. The names of disabled and non-disabled veterans who have duly established claims to additional credits shall be reported in the manner prescribed by law. (See PRR **4.6.1(b)**)

On promotional examinations, the Transit Authority will forward to DCAS a preliminary list of passing candidates. DCAS will access the PRISE database to determine promotion eligibility and seniority data. DCAS will calculate seniority scores according to its existing formulas and rules. DCAS will provide the seniority scores to the Transit Authority as soon as feasible (but, except under extenuating circumstances, no more than 60 days) after receiving the final list of passers from the Transit Authority. The Transit Authority will add the seniority scores to the final test scores to determine the adjusted final average for each candidate.

(b) All claims of manifest error regarding the review of qualifications and the rating of examinations shall be resolved, and corrections of such errors, where applicable, shall be effectuated, prior to the reporting of the results of the examination to DCAS.

(c) The list thus reported shall be officially established only by order of the Commissioner of Citywide Administrative Services. The date prescribed in such order shall be the date of such establishment. (See PRR **4.6.1(c)**)

### 6.2. Terms and Conditions.

An eligible list may be established subject to the conduct of such medical, physical, or other appropriate non-competitive qualifying tests, investigations and conditions as may be deemed appropriate by the Vice President of Human Resources. (See PRR **4.6.2**)

### 6.3. Publication of Established Lists.

- 8 -

DEFENDANTS 000247

EXHIBIT 2

DCAS shall establish the list for a Transit Authority examination within sixty (60) days of receiving transmission of data from the Transit Authority, unless requested to do otherwise by the Vice President of Human Resources.  Upon the establishment of an open competitive eligible list notification thereof shall be published as soon as practicable thereafter stating the title of the examination, the examination number, the number of passing candidates, the date of establishment, and such other information as the Commissioner of Citywide Administrative Services shall prescribe. (See PRR **4.6.3**)

**6.4. Notification to Candidates.**

Unless otherwise provided for in the notice of examination with respect to a continuing eligible list, the Vice President of Human Resources, upon the establishment of an eligible list, shall notify each candidate of the candidate's ratings and, if the candidate has received a passing final examination rating, of the numerical place on such list. Any candidate rejected for reasons other than failure to attain a passing final examination rating shall be advised of such reasons. (See PRR **4.6.4**)

**6.5. Inspection of Examination Papers.**

Except as otherwise provided by the Vice President of Human Resources, candidates may personally inspect their examination papers at the offices of the Transit Authority at specified times in the presence of employees designated by the Vice President of Human Resources. (See PRR **4.6.5**)

**6.6. Duration of Eligible Lists.**

(a) The duration of either an open competitive or promotion eligible list shall be not less than one nor more than four years from the date of establishment. (See PRR **4.6.6(a)**)

(b) Unless otherwise provided, an eligible list which has been in existence for one year or more shall terminate upon the establishment of an appropriate subsequent like list for the same title. (See PRR **4.6.6(b)**)

(c) Where the duration of an eligible list is fixed in the announcement of examination at less than four years, the Commissioner of Citywide Administrative Services may at the request of the Executive Vice President and by resolution prior to the expiration date of such list extend the duration of such list up to the maximum limitation of four years, provided that such announcement of examination states that such extension may be made. (See PRR **4.6.6(c)**)

[NO FURTHER TEXT THIS PAGE]

DEFENDANTS 000248