UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                       :
KENNETH FRILANDO,                    :
                     Plaintiff,    :
                                         :           18 Civ. 5204 (LGS)
            -against-             :
                                         :          **OPINION AND ORDER**
NEW YORK CITY TRANSIT AUTHORITY and :
MANHATTAN AND BRONX SURFACE      :
OPERATING AUTHORITY,           :
                     Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Kenneth Frilando, a deaf individual, brings this action against New York City Transit Authority (the "NYCTA") and Manhattan and Bronx Surface Transit Operating Authority (the "MaBSTOA") for violations of the Americans with Disabilities Act (the "ADA"), Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). The parties cross-move for summary judgment. For the following reasons, summary judgment is denied to Plaintiff and granted in part and denied in part to Defendants.

## I.    BACKGROUND

Unless otherwise noted, the facts below are drawn from the record and are undisputed.

### A.    The NYCTA, MaBSTOA and Exam Administration

The NYCTA is a public benefit corporation existing pursuant to New York Public Authorities Law. The MaBSTOA is a subsidiary of the NYCTA, but exists pursuant to its own statute under the New York Public Authorities Law and is a separate legal entity. The appointment, promotion and continuance of employment of all employees of the NYCTA is governed by the New York Civil Service Law and the rules and regulations of the New York

City Department of Citywide Administrative Services ("DCAS").  DCAS rules and regulations

regarding appointment, promotion and continuance of employment also cover MaBSTOA

positions.  Pursuant to a Memorandum of Understanding between DCAS and the NYCTA, the

NYCTA, through the Examination Unit in its Human Resources Department (the "Exam Unit"),

develops, administers, and scores open competitive examinations for certain NYCTA and

MaBSTOA positions, including all three positions for which Plaintiff applied.  The MaBSTOA

is a subsidiary of NYCTA, and both are affiliates of non-party Metropolitan Transit Authority

(the "MTA").  *See Governance, Risk and Compliance*, MTA,

http://web.mta.info/mta/compliance/pdf/MTA-Creation-Structure.pdf (last visited April 22,

2020); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166

(S.D.N.Y. 2015) (taking judicial notice of documents from a publicly available database search

and collecting cases).

A candidate who wishes to apply to a NYCTA or MaBSTOA position, and seeks a

special accommodation for an exam, must submit a written request to the Exam Unit stating the

specific nature of the candidate's disability, a justification for the special accommodation and

documentation confirming the disability, no later than thirty days before the exam date.  The

Exam Unit can seek, and is bound to follow, guidance from DCAS for any special

accommodation request.  Pursuant to DCAS rules and regulations, exam candidates for positions

within the NYCTA or MaBSTOA must be able to understand and be understood in English (the

"English Language Requirement").  The English Language Requirement was listed on the Notice

of Examination for each of the positions for which Plaintiff applied.  Defendants do not

administer exams in any language other than English.  Michael Quiery, a senior director of

testing, selection and classification at the NYCTA, testified that he could not speak to the

specific meaning of this requirement and that it was "boilerplate" on all Notices of Examinations.

The exams for each of the positions to which Plaintiff applied consist of multiple-choice questions in written English.  However, the exams were not developed to measure or test English literary or reading levels.  For example, Mr. Quiery testified that there is no formal education or experience required for the Track Worker position, and he was not aware of a particular English reading grade level required for the position.  Rather, the exams were developed by the Exam Unit based on a job analysis performed by the NYCTA, and designed to test certain skills required in each position.  For example, the Notice of Examinations for Train Operator and Track Worker positions state that the "multiple-choice test may include questions that require the use of any of the following abilities," such as written comprehension, deductive reasoning, inductive reasoning, information ordering, memorization and visualization, among other skills.  Mr. Quiery testified that "[i]n order to take an exam, a person must be able to read the questions."

### B.      Plaintiff's Background

Plaintiff is legally deaf.  He attended schools that served only deaf students from pre-school through high-school.  While he is able to communicate verbally in English on a basic level, Plaintiff's first and primary language is American Sign Language ("ASL").  Plaintiff testified that he wears a hearing aid as a means of protecting himself in the event of an emergency.  Dr. Judy A. Shepard-Kegl, an expert in neurolinguistics and sign language retained by Plaintiff, opined that Plaintiff's "speech is not intelligible," that Plaintiff is "not comfortable speaking," and that his spoken English is much less grammatical than his written English.  Dr.

Shepard-Kegl also opined that Plaintiff is able to lip-read approximately 12.5% of the words on another person's lips.

The parties dispute Plaintiff's proficiency in reading the English language. Dr. Shepard-Kegl opined that, due to Plaintiff's lack of auditory access to English since birth, he reads at a third- to fourth-grade level. Plaintiff testified that he was able to learn reading and writing in middle-school and that teachers were available to interpret questions on written exams if needed in middle-school, high-school and college. According to Plaintiff, he was given additional time on the New York State Regents Examinations (the "Regents Exams") and on exams in college, and the essay prompt questions on the Regents Exams were interpreted for him. Defendants argue that Plaintiff can read at a high-school level, in part because he read multiple-choice Regents Exams questions without an ASL interpreter. Defendants also note that Plaintiff testified that he watches movies with closed captioning and reads parts of books for pleasure.

### C.      Applications to NYCTA and MaBSTOA Positions

Between 2016 and 2017, Plaintiff submitted employment applications for three separate positions: a Bus Operator position with the MaBSTOA, and Train Operator and Track Worker positions with the NYCTA.

After applying to the Train Operator position, Plaintiff received an admission letter for the exam on April 10, 2017. With his Train Operator application, Plaintiff had provided a letter, dated January 22, 2015, from his doctor, stating that Plaintiff is deaf and requires additional exam time. On April 20, 2017, Plaintiff separately informed the Exam Unit via email that he needed an ASL interpreter for instructions and exam questions. On May 23, 2017, Jennifer Garcia of the Exam Unit -- an associate staff analyst for the MaBSTOA -- responded stating, "We will be able to provide the ASL interpreter for the Test instructions, but not for the exam

4

questions."  On June 2, 2017, the Exam Unit sent a separate email stating that only the request

for additional time could be granted for the Train Operator exam, absent proper documentation

for the ASL interpreter request.  On June 5, 2017, Plaintiff sent two emails, first stating that he

had been provided an ASL interpreter for exams in college, and separately that he had already

provided the relevant documentation for an ASL interpreter.  The Exam Unit responded the same

day, stating that Plaintiff needed to submit a letter from a doctor or specialist specifically stating

that Plaintiff needed an interpreter for exam instructions, because the previous doctor's note

stated only that Plaintiff needed extra time.

Plaintiff responded on June 8, 2017, that he had previously "applied for a test . . . [for a]

city sanitation worker [position] and was approved for an interpreter for instructions and answers

on [the] test without need for [a] doctor's note that I need[ed] [a] sign language interpreter."

After Plaintiff sent an additional email without receiving a response, on August 11, 2017,

Plaintiff submitted a Charge of Discrimination with the United States Equal Employment

Opportunity Commission (the "EEOC"), alleging that the MTA had failed to accommodate his

disability by denying his request for an ASL interpreter for exam questions and answer choices

for the Train Operator's exam (the "EEOC charge").

On November 13, 2017, after applying to the Bus Operator position, Plaintiff received an

admission letter for the exam.  Plaintiff emailed the Exam Unit on November 21, 2017,

requesting an ASL interpreter for instructions and exam questions.  Defendants did not

immediately respond to Plaintiff's email.

On March 1, 2018, after applying to the Track Worker position, Plaintiff received an

admission letter for the exam, and sent an email formally requesting an ASL interpreter for the

instructions and exam questions.  On March 8, 2018, Michael Nigro, an employee in the Exam

Unit, emailed Plaintiff, acknowledging his interpreter requests and stating that the Exam Unit

was in the process of planning Plaintiff's accommodations for the exams for Bus Operator, Train

Operator and Train Worker positions, and asking if Plaintiff also required extra time.  By email

dated March 12, 2018, Mr. Nigro confirmed receipt of Plaintiff's request for an interpreter and

extra time for all three exams.  On August 17, 2018, Mr. Nigro confirmed availability of an

interpreter only for the instructions but not the exam questions and answers, and offered dates

and times for each of the three exams.  On August 31, 2018, Mr. Nigro sent the following email

to Plaintiff:

> In response to your request for a reasonable accommodation we have agreed to
> provide an ASL interpreter to translate our staff member's oral instructions, and
> any communications between you and our staff member, and provide you with
> additional time to complete the exams. We do not provide translation or
> interpretation services of test examination questions for any candidate whose
> primary language is not English. This is for several reasons including that the
> positions require that the candidate understand and be understood in English.
> Furthermore, allowing ASL interpretation of the written exam questions would
> fundamentally alter the exam, and make uniform administration of the exam
> impossible.
>
> If you are limited in your ability to read and write because of your disability, we
> can offer you 200% of the time normally allowed to complete the exams. The
> ASL interpreter will be present as long as you are there. We hope that you will
> find that these accommodations will address your concerns while allowing us to
> administer the exams in a consistent way for their intended purpose. Please let me
> know if you can be available on any of the examination dates I previously
> proposed.

Plaintiff decided not to take the exam for any of the three positions, despite Defendants'

proposed accommodations.  He testified that he declined to take them because he knew he would

fail them without an ASL interpreter for the exam questions and answer choices.

On March 16, 2018, Plaintiff received a letter from the EEOC, stating that it had decided

not to pursue further investigation of the charges submitted in August 2017 and giving Plaintiff

notice of a right to sue, and stating "if you wish to purs[u]e this matter, you must file a lawsuit

against Metropolitan Transit Authority (NYC MTA) in Federal District Court within 90 days."

 **D.**  **Qualifications for the Relevant Positions**

   The job analysis for each of the positions to which Plaintiff applied lists communication

and written comprehension and expression as essential job functions and describes particular

tasks that an employee must be able to perform.  Candidates who pass the exam for any of the

three positions must still meet other requirements, including a medical examination to determine

whether candidates can perform the essential functions of the position.

 **E.**  **Procedural History**

   Plaintiff's original complaint, filed on June 10, 2018, names the MTA as sole Defendant,

as was indicated in the EEOC's right to sue notice.  Plaintiff amended his complaint to add the

NYCTA and MaBSTOA as Defendants.  After Defendants informed him "[u]pon information

and belief, Plaintiff has not applied for any position with defendant Metropolitan Transit

Authority," Plaintiff again amended his complaint dropping the MTA as a Defendant.

   The Second Amended Complaint ("SAC") is the operative complaint and contains four

causes of action pleaded under the ADA, Rehabilitation Act, NYSHRL and NYCHRL,

respectively.  While the SAC cites specific sections of the ADA, the SAC does not plead explicit

theories of liability under the other statutes.

   Defendants and Plaintiff cross-moved for summary judgment as to the entire case.

Plaintiff's motion papers refine his claim of discrimination to three theories of liability:[1] (1)

Defendants failed to provide the accommodations Plaintiff requested for the three exams; (2)

---

[1] In his opposition brief, Plaintiff expressly withdrew a separate theory of retaliation and did not respond to Defendant's arguments for dismissal of any claim based on an adverse employment action.

Defendants used the English Language Requirement as a qualification standard, which "screens out" deaf individuals like Plaintiff from working for Defendants; and Defendants' "blanket-policy" of refusing to provide ASL interpreters for exam questions and answer choices has a disparate impact on deaf and hard-of-hearing individuals.  According to his memorandum of law, Plaintiff asserts the failure to accommodate claim under the ADA, Rehabilitation Act, NYSHRL and NYCHRL, and asserts the remaining two claims under the ADA and Rehabilitation Act.

Claims not explicitly raised on summary judgment -- when a plaintiff seeks summary judgment on the entire case -- are deemed abandoned.  *See Grandy v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 16 Civ. 6278, 2018 WL 4625768, at *3 (S.D.N.Y. Sept. 26, 2018) ("If a party moves for summary judgment on particular claims, and the non-moving party fails to address those claims in her response papers, a court may deem those claims abandoned." (citing *Jackson v. Fed. Exp.*, 766 F.3d 189, 195 (2d Cir. 2014)).

## II.    LEGAL PRINCIPLES

When parties cross-move for summary judgment, the Court analyzes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018).  Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When the movant properly supports its motions with evidentiary materials, the opposing party must

establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019).

## III.   DISCUSSION

### A.     Exhaustion of Administrative Remedies

Defendants argue that Plaintiff's ADA claims must be dismissed because Plaintiff did not assert an administrative claim of discrimination against Defendants, but rather against the MTA, which is no longer named a defendant in this action.  For the following reasons, this argument is rejected, and Plaintiff may sue both Defendants.

In general, when bringing a lawsuit alleging an unlawful employment decision under Title I of the ADA, a plaintiff must first file a timely charge with the EEOC or an authorized state agency.  *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018).  "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action."  *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015).  In the Second Circuit, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency."  *Soules*, 882 F.3d at 57.  "Subsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  *Id.* (alterations in original).  Generally, a plaintiff can bring a lawsuit against only those entities

*named* in the initial EEOC charge.  *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991); *accord*

*MacAlister v. Millennium Hotels & Resorts*, No. 17 Civ. 6189, 2019 WL 3765825, at *3

(S.D.N.Y. Aug. 9, 2010).

    Plaintiff brought a single EEOC charge against the MTA, alleging a failure to

accommodate by refusing to provide an "ASL Interpreter for the test's instructions, questions,

and answers to be on site for the Train Operator's test."  Plaintiff brought the charge on August

11, 2017.  Plaintiff did not include in the charge the failure to accommodate for the Bus Operator

and Track Worker exams, as the Exam Unit had not yet refused to provide the accommodation

for these exams, which occurred later in 2017 and 2018.

    Even though Plaintiff did not bring separate EEOC charges for the Bus Operator and

Track Worker claims, these claims are "reasonably related" to the EEOC charge because they

alleged discriminatory conduct identical to that described in the charge -- i.e., the Exam Unit's

failure to accommodate Plaintiff's request for an ASL interpreter for exam questions and answer

choices.  The Exam Unit's refusal to provide interpretation for the exam questions and answers

was the same for each of the three positions, and ultimately the Exam Unit communicated its

refusal as to all three exams in a single email.  *See Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir.

2003) ("In determining whether claims are reasonably related, the focus should be on the factual

allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which

a plaintiff is grieving." (alteration in original) (internal quotation mark omitted)).

    That Plaintiff did not bring additional EEOC charges for the Bus Operator and Track

Worker claims is excused for the additional reason that these claims fall within the reasonably

expected scope of an EEOC investigation of the charge that Plaintiff did file.  *See Soules*, 882

F.3d at 57.  By March 2018, when the EEOC issued the right to sue notice, the Exam Unit's

communications with Plaintiff concerned the exams for all three positions. Any inquiry by the

EEOC presumably would have uncovered the fact that Plaintiff had made the same request for

all three positions and that the Exam Unit was addressing them collectively. That Plaintiff did

not file EEOC charges concerning his applications to the Bus Operator and Track Worker

positions is not fatal to those claims.

That Plaintiff made the EEOC charge only against the MTA similarly does not preclude

his claims. The Second Circuit has adopted an "identity of interest" test, which allows a plaintiff

to bring suit against parties not named in the EEOC charge if they are sufficiently related to

those named. *See Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999); *accord Percy*

*v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 590 (S.D.N.Y. 2017). The following

factors are considered:

> 1) [W]hether the role of the unnamed party could through reasonable effort by the
> complainant be ascertained at the time of the filing of the EEOC complaint; 2)
> whether, under the circumstances, the interests of a named [party] are so similar
> as the unnamed party's that for the purpose of obtaining voluntary conciliation
> and compliance it would be unnecessary to include the unnamed party in the
> EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted
> in actual prejudice to the interests of the unnamed party; 4) whether the unnamed
> party has in some way represented to the complainant that its relationship with the
> complainant is to be through the named party.

*Vital*, 168 F.3d at 619; *accord Percy*, 264 F. Supp. 3d at 590. No one factor is dispositive. *See*

*Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995) (concluding that, while

the first *Johnson* factor weighed against plaintiff, factors two and three strongly weighed in her

favor); *accord Duverny v. Hercules Med. P.C.*, 18 Civ. 7652, 2020 WL 1033048, at *9

(S.D.N.Y. Mar. 3, 2020). "Courts in this District also consider whether the defendant is cited

within the body of the EEOC charge as having played a role in the discrimination because the

Second Circuit in *Johnson* implied that this was a relevant consideration." *Shannon v. Credit*

*Agricole Sec. (USA) Inc.*, No. 17 Civ. 0667, 2018 WL 1474390, at *3 (S.D.N.Y. Mar. 22, 2018) (internal quotation marks omitted and collecting cases).

Considering these factors, Plaintiff may sue both the NYCTA and MaBSTOA.  At the time of filing, and throughout the period that is the subject of this action, Plaintiff apparently communicated about the three exams with two people, primarily or exclusively through email, Michael Nigro and Jennifer Garcia.  Plaintiff emailed Ms. Garcia at ExamsMakeups@nyct.com, and Mr. Nigro at Michael.Nigro@nyct.com.  In his EEOC charge, Plaintiff identified Ms. Garcia as the "responsible person," describing her as "Staff Analyst at New York City Transit."  Mr. Nigro signed his emails with his title "Manager, Exam Administration, Personnel Testing, Selection and Classification, Division of Human Resources."  There was no reason for Plaintiff to know the corporate relationships among Defendants and the MTA -- that MaBSTOA is a subsidiary of NYCTA, which is an affiliate of the MTA.  Nor should he have known which entities were responsible for the positions he sought, nor for the exams he was seeing to take.  In any event, the Exam Unit was responsible for administering the exams for all three positions to which Plaintiff had applied, and personnel in the Exam Unit denied the accommodation that Plaintiff sought for all three exams.  It was not unreasonable for him to believe he was dealing with one entity, and that the entity was commonly known as the MTA.

Under these circumstances, the first three factors weigh in favor of Plaintiff.  First, Plaintiff could not have learned through reasonable effort the role of Defendants in his exam taking.  Second, since Plaintiff's exclusive contact in this matter was the Exam Unit, the interests of the MTA are so similar to that of Defendants with regard to this dispute that it would have been unnecessary to include them in any voluntary conciliation and compliance.  Third, the EEOC proceedings did not result in any prejudice to the interests of Defendants as the EEOC did

not make any further investigation or engage in attempts of conciliation between Plaintiff and the MTA.

The fourth factor -- whether Defendants have represented to Plaintiff that their relationship with Plaintiff is through the MTA -- is neutral.  Although there is no evidence that Defendants represented to Plaintiff that their relationship to him was through the MTA, Plaintiff persuasively argues that all three entities "are often referred to colloquially as the 'MTA,'" and that exam-related paperwork -- filed as exhibits by Plaintiff -- references "MTA New York City Transit" positions rather than "NYCTA" positions.  *See Cambria v. Costco Wholesale Corp.*, No. 18 Civ. 8255, 2019 WL 6878216, at *1 n.5 (S.D.N.Y. Dec. 17, 2019) (taking judicial notice of information presented by defendant in an exhibit, as properly considered in a motion for summary judgment).  The EEOC right to sue notice also states that any lawsuit must be filed against "Metropolitan Transit Authority (NYC MTA)," further reinforcing Plaintiff's argument regarding the confusing colloquial use of "the MTA."

The fifth factor -- whether Plaintiff's EEOC charge identifies Defendants -- weighs in favor of Plaintiff because the EEOC charge references NYCTA, and names an employee of MaBSTOA, Ms. Garcia.  *See Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 312-13 (S.D.N.Y. 2014) (concluding that the fifth factor weighed in plaintiff's favor, where a single-page complaint form listed the employee of an unnamed defendant under "Individual people who discriminated against me," therefore putting the unnamed defendant on notice that it was potentially liable for their employee's conduct); *Zustovich v. Harvard Maint., Inc.*, No. 08 Civ. 6856, 2009 WL 735062, at *9 (S.D.N.Y. Mar. 20, 2009) (concluding the same).

Defendants' motion for summary judgment on the basis of Plaintiff's failure to exhaust administrative remedies is denied.

13

B.     **Failure to Accommodate Claim**

Both parties move for summary judgment on the portion of Plaintiff's claims premised on the legal theory that Defendants discriminated by denying Plaintiff's requested accommodations.  Summary judgment is denied because a material issue of fact exists as to whether Defendants offered Plaintiff a reasonable accommodation.

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures [and] . . . hiring."  42 U.S.C. § 12112(a).  The ADA defines discrimination to include:

> [N]*ot making reasonable accommodations* to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, *unless* such covered entity can demonstrate that the accommodation would impose an *undue hardship* on the operation of the business of such covered entity.

> 42 U.S.C. § 12112(b)(5)(A) (emphasis added).

To establish a prima facie case of disability discrimination arising from a failure to accommodate, a plaintiff must demonstrate that "(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (alterations in original); *accord Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 368-69 (S.D.N.Y. 2018).

Once plaintiff satisfied his burden of "production and persuasion as to the existence of an accommodation that is facially reasonable," the burden "shifts to the defendant to rebut the reasonableness of the proposed accommodation," which "is in essence equivalent to the burden of showing, as an affirmative defense, that the proposed accommodation would cause the defendant to suffer an undue hardship."  *Wright v. New York State Dep't of Corr.*, 831 F.3d

14

64, 76 (2d Cir. 2016) (internal quotation marks, citations and alterations omitted); *accord Berger*, 304 F. Supp. 3d at 369. "Courts apply the same standard for failure to accommodate cases under the ADA, Rehabilitation Act, NYSHRL, and NYCHRL." *Lawtone-Bowles v. City of New York*, No. 17 Civ. 8024, 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019) (citing *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999)).

The parties dispute three main issues with respect to the failure to accommodate claim: (1) whether Plaintiff could perform the essential functions of the job at issue; (2) whether the accommodations Defendants offered were reasonable; and (3) whether Defendants implementation of Plaintiff's suggested accommodations would cause Defendants undue hardship.

### 1.  Whether Plaintiff Could Perform the Essential Functions of the Job at Issue

The parties dispute the third element, whether Plaintiff is required to show that he could perform the essential functions of the job, by arguing about what the relevant job is. Defendants maintain that Plaintiff must show that he could perform the essential functions of the three positions for which he applied. Plaintiff maintains that he must show only that he could perform the essential functions of the exams. Based on the language of the ADA and the relevant case law, Plaintiff is required to show only that he could perform the essential functions of the exams for his claim of failure to accommodate his taking the exam. Although the parties dispute whether Plaintiff could perform the essential functions of the positions with reasonable accommodation, they do not dispute that Plaintiff could perform the essential functions of the exams.

The ADA offers specific protection against discrimination to individuals during the job application and hiring process. It states that "[n]o covered entity shall discriminate against a

15

qualified individual on the basis of disability in regard to job application procedures [and] . . .

hiring." 42 U.S.C. § 12112(a). Even though failure to accommodate claims most commonly

arise when an individual is already an employee and seeks an accommodation for the "job at

issue," *see McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92 (2d Cir. 2009), or to transfer

to a new job, *see Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208 (2d Cir. 2001), the

Second Circuit focuses on whether an individual could perform the essential functions of the

position for which he *seeks accommodations. See, e.g., McBride*, 583 F.3d at 96-100 (analyzing

whether plaintiff, a utility operator in a cartridge factory who sought reasonable accommodations

to perform that job, could perform its essential functions); *Lovejoy-Wilson*, 263 F.3d at 217

(analyzing whether plaintiff, who sought reasonable accommodations for promotion to the

position of assistant manager, could perform its essential functions); *see also Rosebrough v.*

*Buckeye Valley High Sch.*, 690 F.3d 427, 431-33 (6th Cir. 2012) (concluding that the district

court erred in analyzing whether plaintiff -- who was part of a bus driver *training program* and

sought reasonable accommodations for the purpose of remaining in the program -- was qualified

to perform the essential functions of the bus driver position itself, where the "plain language of

the ADA covers discrimination on the basis of disability during job training").

Here, Plaintiff sought accommodation to take Defendants' exams, not to perform the

duties of Train Operator, Bus Operator or Track Worker. If Plaintiff is able to pass any one of

the exams, he must later meet other requirements for each position, including a medical

requirement to determine whether he could perform the essential functions of the position and,

where appropriate, consider any reasonable accommodations specifically for that purpose. To

require Plaintiff to show that he could perform the essential functions of the three positions -- for

the purpose of adjudicating the failure to accommodate claim -- would be contrary to case law and the ADA's protections for individuals in the job application process.

As Defendants do not dispute Plaintiff's ability to perform essential functions of the exams, this prong of the prima facie case for failure to accommodate is satisfied under the ADA, RA, NYSHRL and NYCHRL.  *See Atencio v. United States Postal Serv.*, 198 F. Supp. 3d 340, 355, 358 (S.D.N.Y. 2016) (noting that "Rehabilitation Act claims generally are analyzed using the same standards that govern ADA claims" and then analyzing the essential functions of plaintiff's position under both statutes); *Romanello v. Shiseido Cosmetics Am. Ltd.*, No. 00 Civ. 7201, 2002 WL 31190169, at *7 n.2 (S.D.N.Y. Sept. 30, 2002), *aff'd*, 71 F. App'x 880 (2d Cir. 2003) (noting that a prima facie case of failure to accommodate under the NYSHRL and NYCHRL requires a plaintiff to prove, in part, that she could perform the "essential functions" of the job with reasonable accommodations, and that the same standards for ADA failure to accommodate claims also apply to cases involving the NYSHRL and NYCHRL, except for the broader definition of disability under the NYSHRL and NYCHRL).

### 2.   Whether Defendants' Proposed Accommodations Were Reasonable

The parties also dispute whether Defendants' proposed accommodations were reasonable.  Because there is a triable issue of fact on this issue, summary judgment is denied to both parties on the failure to accommodate claim.

"The reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by a factfinder."  *Noll*, 787 F.3d at 94; *accord Berger*, 304 F. Supp. 3d at 369.  Where an employer has already taken or offered measures to accommodate the disability in question, "the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable.'"  *Noll*, 787 F.3d at 94; *accord Berger*, 304 F.

Supp. 3d at 369.  If the proposed accommodation is plainly reasonable, "[t]here is no need to engage in further burden-shifting to consider whether the employee's requested accommodation would have been reasonable."  *Noll*, 787 F.3d at 94 (alteration in original); *accord Berger*, 304 F. Supp. 3d at 369.

While "employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee," *Noll*, 787 F.3d at 95, a reasonable accommodation must be *effective*.  *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 399-400 (2002); *accord Berger*, 304 F. Supp. 3d at 369.  Determination of whether something constitutes a reasonable accommodation "is necessarily fact-specific. . . . [and] must be made on a case-by-case basis."  *Wernick v. Fed. Reserve Bank of New York*, 91 F.3d 379, 385 (2d Cir. 1996) (internal citation omitted); *accord Berger*, 304 F. Supp. 3d at 369-70; *see Jacobsen v. New York City Health & Hosps. Corp.*, 11 N.E.3d 159, 170-71 (N.Y. 2014) (assessing "the totality of the work conditions" with respect to whether plaintiff's disability could be reasonably accommodated under the NYSHRL and NYCHRL).

For testing accommodations to be reasonable, they must comply with the ADA's requirement that employers "select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job applicant . . . who has a disability . . . such test results accurately reflect the skills, aptitude, or whatever other factor of such applicant . . . such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking skills of such employee or applicant (except where such skills are the factors that the test purports to measure)."  42 U.S.C. § 12112(b)(7); *cf. Falchenberg v. New York State Dep't of Educ.*, 338 F. App'x 11, 13 (2d Cir. 2009) (summary order) ("To be in compliance [with Titles II and III of] the ADA, examinations . . . must be selected and

administered so as to ensure that, when administered to an individual with a disability, the examination results do not reflect the individual's impaired ability or skill."); *see also Romanello v. Intesa Sanpaolo, S.p.A.*, 998 N.E.2d 1050, 1052 (N.Y. 2013) (analyzing the term "reasonable accommodation" within the context of the NYSHRL and NYCHRL).

The parties agree that the three exams were not developed to test English literacy, reading or writing skills.  Nevertheless, the Notice of Examination for the Train Operator position, in describing the exam, states it may require the use of written comprehension and written expression abilities, as well as other specified skills.  The same is true of the Notice of Examination for the Train Operator position.  Also, pursuant to DCAS's rules and regulations, the Notice of Examination for all three positions, under the "Requirements To Be Appointed" heading, contains an "English Requirement" which states that applicants "must be able to understand and be understood in English."  Defendants administer the exams only in English. The exams are designed to test certain skills required in each position.  For example, Mr. Quiery testified that the Bus Operator exam assesses "[c]ustomer service skills.  Some knowledge components, maybe safety."

Defendants offered Plaintiff the accommodations of providing an ASL interpreter for the exam instructions and extra time to take the exam, but denied Plaintiff's request for an ASL interpreter for exam questions and multiple-choice answers.  The parties dispute whether Defendants' proposed accommodations were reasonable, based on the evidence of Plaintiff's proficiency or lack of proficiency in reading English.

Plaintiff cites evidence, drawn from Dr. Shepard-Kegl's expert report, that he reads English solidly only at a third- to fourth-grade level because, as a deaf person, he has not had

auditory access to English since birth.[2]  Dr. Shepard-Kegl's expert report opines that Plaintiff

"does not have the ability to read English to the extent necessary to take multiple-choice exams

in that language."  Plaintiff's own testimony reflects that that he struggles reading English

because he is deaf.  Plaintiff asserts that he decided not to take the exams with Defendants'

accommodation because he believed he would fail them.  The parties do not dispute that Plaintiff

attended schools that served only deaf students from pre-school through high-school, and

Plaintiff was provided with similar interpretative services -- translation of exam questions and

answer choices -- in middle-school, high-school and college.  Defendants contend that Plaintiff

is able to read English at a high-school level, and cite undisputed evidence that Plaintiff read and

passed the multiple-choice Regents Exams without an ASL interpreter for exam questions and

answer choices, and Plaintiff's testimony that he watches movies with closed captioning and

reads parts of books for pleasure.

　　　　This evidence as a whole creates a triable issue of fact whether Defendants offered

reasonable accommodations given Plaintiff's reading proficiency level.  *Noll*, 787 F.3d at 94

("The reasonableness of an employer's accommodation is a 'fact-specific' question that often

---

[2] In their response to Plaintiff's Local Rule 56.1 Statement of Facts, Defendants argue that Dr. Shepard-Kegl's expert report consists of inadmissible hearsay.  This argument is not persuasive. First, there is no question that Dr. Shepard-Kegl is qualified as an expert in neurolinguistics and sign language under Rule 702.  *See* Fed. R. Evid. Rule 702.  That Dr. Shepard-Kegl's report contains out-of-court statements is not an impediment on a motion for summary judgment, assuming that Dr. Shepard-Kegl is available to testify at trial.  *See GE Funding Capital Mkt. Servs., Inc. v. Neb. Inv. Fin. Auth.*, No. 15 Civ. 1069, 2017 WL 2880555, at *3 (S.D.N.Y. July 6, 2017), *aff'd*, 767 F. App'x 110 (2d Cir. 2019) ("Hearsay evidence is admissible at the summary judgment stage if the contents would [or could] otherwise be admissible at trial." (alteration in original)).  To the extent Defendants argue that the report is irrelevant because, in part, Dr. Shepard-Kegl assesses Plaintiff's reading level in connection with a Sanitation Worker position, this argument is also meritless, as the content of the report is clearly relevant to facts and issues in this case.  *See* Fed. R. Evid. 401.

must be resolved by a factfinder.").[3]  Accordingly, summary judgment is denied to both parties

on the failure to accommodate theory of liability under federal, state and city law.

    **C.**    **English Language Requirement Claim**

       Both parties seek summary judgment on the claim that Defendants' requirement that

employees be able to understand and be understood in English improperly screens out deaf

individuals like Plaintiff with limited English proficiency from working for Defendants in the

Train Operator, Track Worker and Bus Operator positions.  Summary judgment is granted to

Defendants on this claim.

       The ADA prohibits discrimination "against a qualified individual on the basis of

disability in regard to . . .  the hiring . . . of employees."[4]  42 U.S.C. § 12112(a).  Such

discrimination includes "using qualification standards . . . that screen out or tend to screen out an

individual with a disability or a class of individuals with disabilities unless the standard . . .  as

used by the covered entity, is shown to be job-related for the position in question and is

consistent with business necessity."  42 U.S.C. § 12112(b)(6); *see Fraterrigo v. Akal Sec., Inc.*,

376 F. App'x 40, 42 (2d Cir. 2010) (summary order) (citing 42 U.S.C. § 12112(b)(3)(A)).

       An essential element of this claim is evidence that the qualification standards "screen out

or tend to screen out" Plaintiff or a class of individuals on the basis of his disability.  In other

---

[3] Because the issue of the reasonableness of Defendants' proposed accommodation precludes
summary judgment for either party on the theory of failure to accommodate, this opinion does
not address whether Defendants failed to engage in a good-faith interactive process, as Plaintiff
argues, nor does this opinion address the issue of undue burden, which the parties dispute.

[4] This claim also fails because Plaintiff has not cited evidence from which a reasonable jury
could find that he is a "qualified individual," i.e., that "without or without reasonable
accommodation, [he could] perform the essential functions of the employment position[s]" that
he sought.  42 U.S.C. § 12111(8).  However, a detailed discussion is unnecessary because
Defendants are entitled to summary judgment on the claim for the independent reason discussed
in the text.

words, Plaintiff must prove a causal relationship between the challenged qualification standard --

the English Language Requirement[5] -- and the failure to hire him or deaf individuals with

allegedly limited proficiency in written English.  *Compare Bryan v. Wal-Mart Stores, Inc.*, 669

Fed App'x 908, 910 (9th Cir. 2016) (dismissing a § 12112(b)(6) claim for failure to allege a

causal nexus between the challenged policy, plaintiff's termination and his disability), *with*

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988, 994 (9th Cir. 2007) (finding that

defendant's hearing requirement was a facially discriminatory qualification standard because it

focused directly on an individual's disability and where defendant did not dispute that the

requirement screened out the entire class of employees (citing 42 U.S.C. § 12112(b)(6))).

The English Language Requirement claim fails because Plaintiff has not proffered any

evidence that he was excluded from employment with Defendants *because of* his disability or

even because of his limited ability to read written English.  The undisputed evidence is that he

did not take the qualifying exams.  Although he predicted that he would fail them, it is

impossible to know whether he actually would have failed them or passed them with

Defendants' proposed accommodations, as he had passed the Regents Exams without an ASL

interpreter for exam questions and answer choices.  Plaintiff similarly has not proffered any

evidence that a similarly situated class of individuals was excluded from employment with

Defendants because of their disability.  Summary judgment is granted to Defendants on the

English Language Requirement claim.

### D.    Disparate Impact Claim

---

[5] The English Language Requirement is a qualification standard.  *See* 29 C.F.R. § 1630.2(q)
("Qualification standards . . . includ[e] the skill, experience, education, physical . . .  and other
requirements established by a covered entity as requirements which an individual must meet in
order to be eligible for the position held or desired.").

Both parties seek summary judgment on Plaintiff's claim that Defendants' "blanket-policy" of refusing to provide ASL interpreters for exam questions and answer choices results in a disparate impact on deaf and hard-of-hearing individuals.  Summary judgment is granted to Defendants because no disparate impact claim is alleged in the SAC.

A complaint is required to give fair notice of the claims alleged, *see Boykin v. KeyCorp*, 521 F.3d 202, 212 (2d Cir. 2008), and a plaintiff is not permitted to add unpleaded claims by arguing them at summary judgment.  *See Mauro v. S. New England Telecommunications, Inc.*, 208 F.3d 384, 386 n.1 (2d Cir. 2000).  Nor is there any reason to grant Plaintiff leave to amend the complaint once again, when he is represented by counsel, has twice amended his complaint, and where discovery is complete and neither party has conducted discovery on an issue that is highly dependent on statistical evidence.  *See id.* (concluding that the district court did not err in refusing to consider plaintiff's ADEA claim, raised for the first time in papers opposing a summary judgment motion, even where plaintiff could not have known about the claim and had not previously moved to amend the complaint); *accord Grandy v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 16 Civ. 6278, 2018 WL 4625768, at *11 (S.D.N.Y. Sept. 26, 2018) (collecting cases); *see also B.C. v. Mount Vernon City Sch. Dist.*, No. 11 Civ. 1411, 2014 WL 4468082, at *7 (S.D.N.Y. Aug. 28, 2014) (concluding that plaintiffs failed to make a prima facie showing of disparate impact under the ADA or Rehabilitation Act where the record contained no evidence regarding the relevant statistical comparison).  Summary judgment is granted to Defendants on the disparate impact claim.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED. Defendants' motion for summary judgement is GRANTED with respect to any disparate impact

claim, and any claim based on the theory that the English Language Requirement is a discriminatory qualification standard, and otherwise DENIED.  For clarity, the sole surviving theory of liability is the alleged failure to accommodate, brought under federal, state and municipal law.

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 49 and 56.

Dated: April 22, 2020
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**