**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KENNETH FRILANDO,

                              Plaintiff,

          -against-

NEW YORK CITY TRANSIT AUTHORITY
and MANHATTAN AND BRONX
SURFACE OPERATING AUTHORITY,

                              Defendants.

18 Civ. 5204 (JSR)

**JOINT PROPOSED**
**PRETRIAL CONSENT ORDER**

       In accordance with the Court's Individual Rules of Practice, the Parties jointly submit their

proposed Pretrial Consent Order.

**Rule 4(b)(i): Joint Overview of the Case**

       Plaintiff Kenneth Frilando is profoundly deaf, and his primary language is American Sign

Language ("ASL"). Mr. Frilando applied for the Civil Service positions of Train Operator and

Track Worker at defendant New York City Transit Authority ("NYCT") and for the position of

Bus Operator at defendant Manhattan and Bronx Surface Transit Operating Authority

("MaBSTOA"). The application process for the three positions required that Mr. Frilando take and

pass written, multiple-choice examinations. All three examinations were administered by NYCT.

       For each of the three examinations, Mr. Frilando requested extra time and an ASL

interpreter for the exam instructions and the exam questions. Mr. Frilando provided NYCT with a

doctor's note stating that Mr. Frilando "will need some additional time to complete his DCAS

[Department of Citywide Administrative Services] testing" and an Audiological Report. NYCT

agreed to provide extra time and an ASL interpreter for the oral exam instructions and any oral

communications between Mr. Frilando and NYCT's staff member administering the exams.

NYCT did not agree to provide an ASL interpreter to interpret the written examination questions or the written answers for Mr. Frilando. Mr. Frilando did not take any of the three exams for the positions of Train Operator, Bus Operator, or Track Worker.

Mr. Frilando sued Defendants for disability discrimination under city, state, and federal anti-discrimination laws, alleging that Defendants failed to accommodate his deafness with an ASL interpreter, among other claims that were dismissed when summary judgment on them was awarded to Defendants.

### Rule 4(b)(ii): Particularized Description of Each Party's Remaining Claims

#### Plaintiff's Statement:

Mr. Frilando asserts disability-discrimination claims against Defendants under Title I of the Americans with Disabilities Act, the Rehabilitation Act, the New York State Human Rights Law, and the New York City Human Rights Law ("City HRL"): (1) Defendants failed to accommodate his deafness with an ASL interpreter for written exam questions and answers, thereby depriving him of equal participation and equally effective communication; (2) Defendants similarly failed to accommodate the "needs" of Mr. Frilando, who is a person with a disability, thereby depriving him of the opportunity to "enjoy the right or rights in questions" under the City HRL; (3) Defendants treated Mr. Frilando "less well" on the basis of his disability under the City HRL, (Pl.'s Br. in Support of Summ. J. at 33, ECF No. 58 ("Under the [City HRL], it is unlawful for an employer to treat an individual 'less-well' on the basis of their disability.") [1]; (4) Defendants

---

[1] Legal Enforcement Guidance for the City HRL explains that less-well and failure-to-accommodate theories can be intertwined. N.Y.C. Comm'n on Human Rights, Legal Enforcement Guidance on Discrimination on the Basis of Disability, https://on.nyc.gov/2zu4LKj (June 2018), at 76 ("Although a failure to provide a reasonable accommodation is its own distinct claim under the NYCHRL, depending on the specific facts of the case, a failure to accommodate could also implicate a disparate treatment claim."); *see also id.* at 16 & 19 (The less-well theory prohibits

failed to engage in the "interactive process" with Mr. Frilando, which may also be known as the "cooperative dialogue" under the City HRL, (Mem. & Order at 21 n.3, ECF No. 66.). Under the City HRL, Defendants have the burden of proving undue hardship by a preponderance of the evidence.

At the summary-judgment stage, Judge Lorna G. Schofield observed that "[b]ased on the language of the ADA and the relevant case law," Plaintiff "is required to show only that he could perform the essential functions of the exams for his claim of failure to accommodate his taking the exam." (Mem. & Order at 15, ECF No. 66.) Furthermore, Judge Schofield noted the Parties' agreement that the underlying "exams were not developed to test English literacy, reading or writing skills." (Mem. & Order at 19 & 3 ("[T]he exams were not developed to measure or test English literary or reading levels.").) Nor did Defendants require a doctor's note regarding an ASL interpreter in order to approve Mr. Frilando's request for an ASL interpreter for the oral or written instructions. Yet Defendants attempt to relitigate this issue, contending that Mr. Frilando could not perform the essential functions of the underlying jobs. The logical consequence of Defendants' argument is to permit discrimination in the job application process—for race, sex, and disability discrimination—if an employer could arguably show that an applicant was not qualified for the underlying position. That is not the law.

Judge Schofield reached the correct conclusion, which does not need to be relitigated. Consider two brief examples. Federal regulations implementing the Rehabilitation Act make clear that discrimination is prohibited in "the processing of applications for employment." 10 C.F.R. § 4.122(c)(1). Likewise, the City HRL requires "reasonable accommodations "to enable a person

_____

covered entities from "acting on assumptions about what [a person] with a disability can or cannot do" and from making that person's "patronage feel unwelcome.")

with a disability to satisfy the essential requisites of a job *or* enjoy the right or rights in question." N.Y.C. Admin. Code. § 8-107(15)(a) (emphasis added). The right or rights in question here is the pre-employment examinations. Legal Enforcement Guidance for the City HRL rejects Defendant's attempt to re-litigate concluded issues: "An employer's obligation to provide reasonable accommodations is not limited to current employees, but equally applies to applicants and interviewees." N.Y.C. Comm'n on Human Rights, Legal Enforcement Guidance on Discrimination on the Basis of Disability, https://on.nyc.gov/2zu4LKj (June 2018), at 89.

Finally, as a factual matter, DCAS ostensibly observed these requirements in its Protocols Respecting Examination Procedures, Veterans Preference, and Eligible lists: "Where appropriate, a reasonable accommodation will be provided for a person with a disability to enable him or her to take the examination, *and/or* perform the essential functions of the job." (Defs.' Ex. 20 at DEF243) (emphasis added); (Pl.'s Ex. 13 at DEF243).

### Defendants' Statement:

According to the summary judgment decision in this action (ECF Doc. No. 66), Plaintiff's "sole surviving theory of liability is the alleged failure to accommodate, brought under federal, state and municipal law." The Court should reject Plaintiff's attempt to broaden his surviving claims, which Plaintiff is trying to do, as reflected by Plaintiff's statement above as to his remaining claims.

Defendants deny Plaintiff's allegation that they failed to accommodate his deafness because they did not agree to provide him with an ASL interpreter for the written parts of the examinations. Defendants offered a reasonable accommodation to what was a novel request for an accommodation of this type: twice the amount of time as compared to other test-takers for Plaintiff to take the exams, and an ASL interpreter to interpret each exam's oral instructions and any

communications between Plaintiff and the NYCT staff member administering the exams. The only accommodation request that was substantiated by a doctor's note was one that did not specify what Plaintiff's disability was and stated that he needed unspecified extra time for the exam. ASL as one's primary language is not a disability that must be reasonably accommodated, and Plaintiff never provided NYCT with any documentation from a medical professional that even mentioned ASL interpretation or stating Plaintiff required ASL interpretation of written exam questions and answers because of his disability. Nevertheless, at the direction of DCAS, NYCT provided the additional accommodation of an ASL interpreter who would interpret the oral instructions that were given before the test began, and who would be available to interpret any further instructions that might be given orally during the exam, or any questions Plaintiff may have had during the exam.

Plaintiff's requested accommodation would have subjected the defendants to undue hardship because it was not possible for NYCT to provide the requested accommodation. NYCT is required to administer its exams pursuant to the examination rules, regulations, and protocols of DCAS. The tests were required to be offered in English, in accordance with DCAS test protocols, which governed NYCT testing. DCAS told NYCT that NYCT could provide the ASL interpretation for only oral instructions and oral questions that arose during the exam. Further, ASL interpretation of the exam questions and answers would fundamentally alter the nature of the exams and create an unequal playing field among job applicants.

Plaintiff was not qualified for any of the three positions for which he applied. Therefore, he cannot prove the *prima facie* elements of a failure to accommodate claim, and the Court should dismiss his failure to accommodate claims. Although Judge Schofield's summary judgment decision held Plaintiff need not prove he was qualified for the positions to which he applied, the

law of the case doctrine is "admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Error is one reason to reconsider a prior decision. *Petitions of Kinsman Transit Co.*, 388 F.2d 821, 825, n.9 (2d Cir. 1968) ("the 'law of the case' doctrine permits a change of position if it appears that the court's original ruling was erroneous").

Judge Schofield erred by departing from prior cases, including *Williams v. MTA Bus Co.*, where the plaintiff was represented by the same attorneys representing Plaintiff here:

> As a preliminary matter, Plaintiff asserts in his briefing that the question of whether he was qualified for the Assistant Stockworker position is irrelevant, and that the "key issue" is instead whether he was qualified to take the exam. (Pl. Mem., at 15; Pl. Reply, at 2-4.) The Court finds this argument unpersuasive.
>
> It is well-settled and uncontroversial law that a plaintiff asserting a disability discrimination claim in the employment context must be able to demonstrate – as part of a *prima facie* case – that he or she was qualified for the position at issue.

*Williams v. MTA Bus Co.*, No. 17CV7687 (DF), 2020 WL 1922911, at *7 (S.D.N.Y. Apr. 20, 2020), *reconsideration denied*, No. 17CV7687 (DF), 2020 WL 4904058 (S.D.N.Y. Aug. 20, 2020); *see also Douris v. Bucks Cnty*, No. 04-CV-232, 2005 U.S. Dist. LEXIS 1279, at *18 (E.D. Pa. Jan. 31, 2005) (dismissing claim brought under Title I of the ADA where "[e]ven though Plaintiff points to possible discriminatory treatment [in the job application process]," plaintiff failed to demonstrate he was otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation).

Judge Schofield erred by departing from the fundamental principle that the protections of the ADA expressly apply only to "qualified" individuals who can perform the essential functions of the job, with or without an accommodation, and not to unqualified individuals. *See Stevens v. Rite Aid Corp.*, 851 F.3d 224, 228–29 (2d Cir. 2017). In *Stevens*, the Second Circuit explained

Case 1:18-cv-05204-JSR   Document 87   Filed 10/13/20   Page 7 of 26

that the "ADA prohibits discrimination in employment against 'a qualified individual on the basis of disability.'" *Id.* A "qualified individual" is one who, with or without reasonable accommodation, can perform the essential functions of the "employment position" that the individual "holds or desires." *Id.* The "employment position" that Plaintiff "desire[d]" was Train Operator, Bus Operator, or Track Worker—not test-taker.

Judge Schofield's decision gives job applicants more expansive rights than employees. Settled law is that disabled employees have no claim if they are not qualified for a position even if discriminated against. *See, e.g, Howard v. City of New York*, 62 F. Supp. 3d 312, 319-20 (S.D.N.Y. 2014) ("[i]f the consequences of the handicap are such that the employee is not qualified for the position, then a firing because of that handicap is not discriminatory, even though the firing is solely by reason of the handicap") (internal quotation and citation omitted). But Judge Schofield's decision, if adhered to, allows job applicants to maintain claims for separate stages of the pre-employment process despite being not qualified for the positions they seek. No policy underlying the federal, state, or city laws prohibiting discrimination on the basis of a disability justifies giving job applicants more expansive rights than employees.

Further, because Plaintiff could not have obtained any of the positions to which he applied, he has suffered no injury, which not only eliminates money damages but also means that Plaintiff lacks standing.

### Rule 4(b)(iii): Facts on Which the Parties Agree

1.   Mr. Frilando is profoundly deaf.

2.   Mr. Frilando's deafness is a disability within the meaning of the city, state, and federal anti-discriminations laws at issue.

3.     Mr. Frilando provided Defendants with an audiological report, and in a June 8, 2017 email from Mr. Frilando to the NYCT, Mr. Frilando wrote that he is deaf.

4.     Defendants receive federal financial assistance.

5.     Mr. Frilando cannot be understood in spoken English and does not understand spoken English.

6.     Mr. Frilando's primary language is ASL. His second language is English.  He has limited abilities to "lip read" and does not use speech to communicate.

7.     In 2017, Mr. Frilando applied for the position of Train Operator at NYCT and for the position of Bus Operator at MaBSTOA. In 2018, Mr. Frilando applied for the position of Track Worker at NYCT.

8.     For each of the three positions, Mr. Frilando was required to take and pass a multiple-choice examination.

9.     Defendants did not verify Mr. Frilando's qualifications for the positions of Train Operator, Bus Operator, or Track Worker. It is customary that such an investigation would be done after an applicant takes and passes the required exam for a position.

10.     With respect to the required exams for the three positions for which he applied, Mr. Frilando requested extra time and an ASL interpreter for the oral instructions and the written questions.

11.     NYCT instructs applicants requesting an accommodation because of a disability to submit a written request not later than 30 days prior to the test date. The request must include, *inter alia*, the specific nature of the applicant's disability, a justification for the special accommodations, and documentation corroborating the applicant's disability by a doctor or agency authorized for this purpose.

12.     In support of his request for extra time and an ASL interpreter, Mr. Frilando provided NYCT with two documents: (a) an audiological report dated January 27, 2010 and (b) a note from Dr. Lawrence J. Marino dated January 22, 2015, which stated, "Please note that as the result of his disability, Mr. Frilando will need some additional time to complete his DCAS testing."

13.     Mr. Frilando never provided NYCT with documentation from any medical professional stating that he required an ASL interpreter for the exam questions and answers because of his disability.

14.     Prior to offering an accommodation to Mr. Frilando, NYCT received from Mr. Frilando an email stating that he was deaf and another email attaching an Audiological Report and a note from Dr. Lawrence J. Marino.

15.     Defendants do not provide translation or interpretation services of test examination questions to test-takers who claim they need such an accommodation because their primary language is not English.

16.     NYCT asked DCAS how to respond to Mr. Frilando's request.

17.     NYCT is required to administer exams in accordance with DCAS's instructions.

18.     The appointment, promotion, and continuance of employment of all employees of NYCT is governed by the New York Civil Service Law and the rules and regulations of DCAS.

19.     DCAS and NYCT entered into a Memorandum of Understanding in 2011 and again in 2018, both of which provided that NYCT shall develop, administer, and score open competitive examinations for certain NYCT job titles.

20.     Pursuant to both the 2011 and 2018 Memorandum of Understanding between DCAS and NYCT, in administering exams during 2017 and 2018, NYCT was required to comply with DCAS's instructions, including DCAS's General Examination Regulations (the

"Regulations") and Protocols Respecting Examination Procedures, Veterans Preference, and Eligible lists (the "Protocols"), and any amendments or changes made by DCAS to its General Examination Regulations or Protocols Respecting Examination Procedures, Veterans Preference, and Eligible lists.

21.    Pursuant to a Memorandum of Understanding entered into in January 2006, NYCT has developed, administered, and scored exams for MaBSTOA job titles pursuant to the same policies and procedures used for NYCT job titles.

22.    NYCT notified Mr. Frilando that he would receive extra time to complete the exams and an ASL interpreter for the oral or written exam instructions and any communications between Mr. Frilando and Defendants' staff member administering the exams. Mr. Frilando responded that he would take the exams.

23.    Mr. Frilando never took any of the three examinations.

24.    Previously, in the spring of 2017, Mr. Frilando had taken a pre-employment examination for a Sanitation Worker position with the City of New York. The exam was administered by DCAS. DCAS agreed to provide an ASL interpreter for the written exam instructions and any oral instructions. By mistake, and contrary to what DCAS had agreed to provide, the ASL interpreter interpreted not only the exam instructions, but also the written multiple-choice answer options.

### Rule 4(b)(iv): Facts That Are Disputed

1.    Mr. Frilando's proficiency in reading the English language.

Plaintiff's contention: Mr. Frilando's primary language is American Sign Language, and so he contends that taking the pre-employment examinations without an ASL interpreter prevents him from receiving equal participation or equally effective communication—that is, whatever is

written would not be as clear and understandable to Mr. Frilando as it is for applicants who do not have disabilities. Notably, under the City HRL, every requested accommodation is reasonable unless it imposes an undue hardship on Defendants.

At the summary-judgment stage, Judge Lorna G. Schofield noted the Parties' agreement, which was supported by sworn deposition testimony, that the underlying examinations were not developed to measure or test English literacy, reading, or writing skills. Defendants are not aware if a particular English reading level is required for each of the three pre-employment examinations.

Furthermore, Mr. Frilando contends that Defendants primarily relies on after-acquired evidence, such as the fact that Mr. Frilando took a Regents Exam without an ASL interpreter. Relatedly, Defendants failed to engage in the "interactive process" under anti-discrimination laws or the "cooperative dialogue" under the City HRL.

Defendants' contention: Should this issue prove to be relevant and a subject of the trial, which Defendants contend it is not, and should not be the subject of the trial, Plaintiff's proficiency in reading the English language was sufficient to comprehend the written exam questions and answers for the positions to which he applied.

Plaintiff learned to read written English in school. He was taught to read written English throughout his schooling, including in grade school, middle school, and high school. Plaintiff took and passed a high school Regents examination without ASL interpretation of test questions or answers. He has a Bachelor of Science in Communication Design from the New York City College of Technology and an Associate's Degree in Applied Science: Computer Programming and Systems from LaGuardia Community College.

Plaintiff reads for pleasure. He watches movies with closed captioning and reads the closed captioning. In Plaintiff's prior employment positions, he and his supervisors communicated in written English by writing notes to each other.

2. Whether Mr. Frilando's requested accommodation would have caused an undue hardship to defendants.

Plaintiff's contention: Mr. Frilando contends that Defendants have no evidence of undue hardship. Under the City HRL, every requested accommodation is reasonable unless it imposes an undue hardship on Defendants, and Plaintiff is not required to disprove, rebut, or effectively contradict Defendants' assertion of undue hardship. But in short, during the underlying events, Defendants provided the following reasons to deny Mr. Frilando's request: (1) the positions allegedly require that the candidate understand and be understood in English; (2) allowing ASL interpretation of the written exam questions would fundamentally alter the exam; and (3) allowing ASL interpretation of the written exam questions would make uniform administration of the exam impossible. When pressed for further explanation during discovery, Defendants invoked privilege. Defendants have not identified how the provision of an ASL interpreter for written exam questions and answers would result in "an unequal playing field among applicants" but extra time would be acceptable. Nor have Defendants explained how the provision of ASL interpreter for written exam questions and answers would result in a fundamental alteration.

What is more, the Memoranda of Understanding, which were executed by NYCT and DCAS, could be terminated by NYCT or DCAS at any time with sixty days' notice, and both parties agreed to comply with all applicable city, state, and federal laws. At a 30(b)(6) deposition, Robert Alexander, who is a senior director of DCAS and will be a witness at trial, testified to his

belief that the requirement of English stems from the New York Civil Service Law, but he was unable to identify a provision requiring a candidate to understand or be understood in English.

Nor could Defendants avoid liability by delegating their obligations under city, state, and federal anti-discrimination laws like the Americans with Disabilities Act. Indeed, Defendants, "in providing any aid, benefit, or service, may not, directly or indirectly or through contractual, licensing, or other arrangements, on the basis of disability deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service." *See, e.g.*, 28 C.F.R. § 35.130(b)(1)(i).

<u>Defendants' contention</u>: Defendants contend that the requested accommodation of an ASL interpreter to interpret the exam questions or answers would have caused an undue hardship to defendants. It was not possible for Defendants to provide the requested accommodation because they were required to administer the exams for which Plaintiff applied according to DCAS's exam regulations and protocols, including any modifications or changes to those regulations and protocols. DCAS and NYCT entered into a Memorandum of Understanding in 2011 and again in 2018, both of which provided that NYCT shall develop, administer, and score open competitive examinations for certain NYCT job titles. Pursuant to both the 2011 and 2018 Memorandum of Understanding between DCAS and NYCT, in administering exams during 2017 and 2018, NYCT was required to comply with DCAS's instructions, including DCAS's General Examination Regulations (the "Regulations") and Protocols Respecting Examination Procedures, Veterans Preference, and Eligible lists (the "Protocols"), and any amendments or changes made by DCAS to its General Examination Regulations or Protocols Respecting Examination Procedures, Veterans Preference, and Eligible lists.

DCAS told NYCT that an ASL interpreter should be provided for the exam instructions, but not for the exam's questions and answers. Because DCAS told NYCT not to provide an ASL interpreter for the exam questions or answers, it would have been an undue hardship for NYCT to provide Plaintiff with the accommodation he requested. *Cf. Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 123 (2d Cir. 1999) (accommodation not reasonable where it was "virtually impossible"). Further, provision of an ASL interpreter would have fundamentally altered the nature of the exam, would have prevented the uniform administration of the exam, and would have created an unequal playing field among applicants.

3.   Whether the accommodation offered by NYCT was reasonable.

<u>Plaintiff's contention</u>: Plaintiff contends that an ASL interpreter to interpret the written examination questions and answers is a reasonable accommodation. Defendants were aware that Mr. Frilando's primary language was American Sign Language, not English. Plaintiff's expert witness, Dr. Judy Shepard-Kegl, will explain that being Deaf does affect a person's ability to acquire and understand English.

For at least one area of the application process, DCAS guidance states that an "interviewer must be alert to [a] candidate's ability to understand and be understood in English. A candidate who seems to lack these abilities should be referred to take a qualifying English oral test. However, reasonable accommodation should be provided for a candidate who has a disability which prevents or impedes communication in English." [2] https://www1.nyc.gov/assets/dcas/downloads/pdf/reports/200_2.pdf.

---

[2] *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (discussing judicial notice of "documents filed with governmental entities and available on their official websites," among other things), *cited by* Mem. & Order, ECF No. 66.

Defendants' failure to provide this reasonable accommodation bears no relation to any documentation provided by Mr. Frilando. On March 12, 2018, Michael Nigro, who is Defendants' Manager of Exam Administration, emailed Mr. Frilando through ExamsUnit@nyct.com and confirmed Mr. Frilando's request for accommodations without further need for supporting documentation: "We have now received your emailed request for ASL Interpretation Services **and** extended time on the multiple-choice." Relatedly, Defendants did not require a doctor's note regarding an ASL interpreter in order to approve Mr. Frilando's request for an ASL interpreter for the oral or written instructions.

In fact, Defendants' position is categorical: they do not provide translation or interpretation services of test examination questions for any candidate whose primary language is not English. Defendants never assessed Mr. Frilando's abilities to communicate in English.

<u>Defendants' contention</u>: Defendants contend that the accommodation offered by NYCT was reasonable. Defendants offered to give Plaintiff twice the amount of time to complete the exams as offered to other applicants and offered to provide an ASL interpreter to interpret the exam instructions and any communications between Plaintiff and the NYCT staff member administering the exams. This accommodation was reasonable because, among other things, ASL as one's primary language is not a disability; Plaintiff submitted no documentation from a medical professional stating that because of Plaintiff's disability, he needed an ASL interpreter for the test questions; and Plaintiff is capable of reading written English.

Plaintiff's above quotation is taken from a DCAS bulletin applicable to candidates on an eligible list, meaning candidates who have already taken and passed any qualifying written exam. Thus the quotation has no relevance or application to the requirement that the written exam be in English. DCAS examinations are given only in English. The quotation also has no relevance or

Case 1:18-cv-05204-JSR   Document 87   Filed 10/13/20   Page 16 of 26

application to Plaintiff because he never took or passed any of the exams for the jobs to which he applied.

Further, a requested accommodation cannot be reasonable where it is not possible. *See Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 123 (2d Cir. 1999) (accommodation not reasonable where it was "virtually impossible"). Here, NYCT could not provide the accommodation requested by Plaintiff because DCAS told NYCT not to provide the requested accommodation.

4.    Whether Mr. Frilando's requested accommodation of an ASL interpreter to interpret the exam questions was connected to his disability.

Plaintiff's contention: Plaintiff contends that as a result of his deafness, he learned to primarily communicate through American Sign Language, not English. What is more, Defendants failed to accommodate the "needs" of Mr. Frilando, who is a person with a disability, thereby depriving him of the opportunity to "enjoy the right or rights in questions" under the City HRL.

Defendants' contention: The requested accommodation was not connected to Mr. Frilando's disability. Mr. Frilando stated that he required ASL interpretation of the exam questions because ASL was his primary language. ASL as one's primary language is not a disability.

5.    Whether Mr. Frilando was qualified for the position of Train Operator, Bus Operator, or Track Worker.

Plaintiff's contention: Defendants attempt to relitigate this issue decided by Judge Schofield. But the facts cited by Defendants were essentially the facts presented to Judge Schofield at the summary-judgment stage. (*See* Defs.' Local Civ. R. 56.1 Stmt. ¶¶ 10–11., ECF No. 51-1; Defs.' Reply Br. in Support of Summ. J. at 3, ECF No. 61) ("[C]ommunicating with customers is an essential job function for the Bus Operator and Train Operator positions. Bus Operators must

also be able to provide directions to passengers . . . .") (internal citation omitted). To reiterate, Judge Schofield observed that "[b]ased on the language of the ADA and the relevant case law," Plaintiff "is required to show only that he could perform the essential functions of the exams for his claim of failure to accommodate his taking the exam." (Mem. & Order at 15, ECF No. 66.)

Even if this issue was litigated at trial (and it should not be), Mr. Frilando's accommodation request would not have reallocated the essential functions of the job. Throughout the disputed facts, Defendants focus on hearing requirements, but the discussion is hypothetical because Mr. Frilando could have requested an ASL interpreter for the job to receive a visual representation of whistles, stop chimes, and so on. *See Searls v. Johns Hopkins Hosp.*, 158 F. Supp. 3d 427, 437 (D. Md. 2016) ("A nurse's duties with respect to communicating and responding to alarms go beyond hearing what patients are saying and hearing an alarm ringing. Searls would have used her own medical expertise and training when speaking to patients, families, and other hospital personnel; providing care based on her exchanges with patients; and taking the appropriate action in response to an alarm after an interpreter communicated the sound of an alarm visually. Therefore, Searls' accommodation request would not have reallocated the essential job functions of communicating with others and responding to alarms.")

Throughout discovery and at the summary-judgment stage, Defendants "present[ed] no estimation of the costs actually associated with hiring an interpreter on a daily basis. There is also no evidence in the record of Defendant[s'] operating budget or the effect a daily interpreter might have on that budget." *See, e.g.*, *Smith v. Loudoun Cty. Pub. Schs*, No. 1:15cv956 (JCC/TCB), 2016 U.S. Dist. LEXIS 19895, at *32–33 (E.D. Va. Feb. 18, 2016); *Searls v. Johns Hopkins Hosp.*, 158 F. Supp. 3d 427, 439 (D. Md. 2016) ("Additionally, even if it is correct that the salary of a full-time ASL interpreter would be twice the salary of a nurse, that in itself does not establish that an

ASL interpreter would be an undue hardship."). In fact, at a 30(b)(6) deposition, Michael Quiery, who will be a witness at trial, testified that Defendants were unaware if cost issues prevent them from hiring an ASL interpreter to interpret the written questions and answers for Defendants' pre-employment examinations.

Defendants' contention:  Plaintiff was not qualified for the positions of Train Operator, Bus Operator, or Track Worker.

As set forth in the Notice of Examination for the Train Operator and Track Worker exams, the exams required the ability to use "Written Comprehension" and "Written Expression." Each exam was a written exam and in English. The Notice of Examination for each of the positions to which Plaintiff applied stated: "**English Requirement:** You must be able to understand and be understood in English." Plaintiff cannot understand or be understood in spoken English.

Before beginning work in any of the three positions, Mr. Frilando needed to satisfy other job requirements, including medical requirements, specified work experience and the requirement that he be able to understand and be understood in English, in addition to taking and passing the multiple-choice examination. Plaintiff did not meet the minimum hearing qualifications for any of the three positions, and a full-time ASL interpreter accompanying Plaintiff on the job would have both eliminated Plaintiff's performance of the essential requirements of the job and resulted in a direct threat to Plaintiff's safety and the safety of others.

A Train Operator must be able to hear the radio despite noise from other trains passing by; announcements by the conductor made over the P.A. system; the noise of another train approaching; air leaks between couplers, line, and hoses; motors, compressors, and equipment failures; and flat wheels, broken rails, and track defects. A train operator must also be able to hear and detect different buzzer and whistle sounds.

Train Operators must make announcements to passengers regarding station stops, delays, and unusual occurrences; communicate with personnel via two-way radio to report delays, mechanical problems, and emergencies; and receive communications from conductors by listening for buzzer signals.

As to hearing sensitivity/discrimination, a Train Operator must demonstrate a hearing sensitivity on pure tone audiometric testing not worse than an average hearing loss in the better ear greater than 40 dB at 500 Hz, 1000 Hz, and 2000 Hz. As to auditory attention (hearing noise), a Train Operator must either (a) demonstrate a hearing sensitivity on pure tone audiometric testing not worse than 40 dB in each ear at each frequency: 500 Hz, 1000 Hz, 2000 Hz and 3000Hz or (b) have an audiometric speech discrimination test performed by an audiologist with at least 70% reception in one ear at an intensity of no greater than 65dB. As to auditory attention, the use of a hearing aid to meet these qualifications is not permitted unless the applicant can demonstrate that they can function well in the actual job environment. As to sound localization (also referred to as hearing localization), a Train Operator must demonstrate a hearing sensitivity on pure tone audiogram testing not worse than 40dB in either ear at each frequency: 500 Hz and 1000 Hz.

A Bus Operator must be able to hear passenger questions; the stop chime; emergency vehicles; undercarriage bus noise; and the central control dispatcher notwithstanding any background noise. A Bus Operator must also be able to hear and recognize emergency vehicles.

Bus Operators must be able to provide travel directions and information to passengers, announce bus stops over the public address system, and report delays, mechanical problems and emergencies to a dispatcher via two-way radio.

A Bus Operator must demonstrate a hearing sensitivity on pure tone audiometric testing not worse than an average hearing loss in the better ear greater than 40 dB at 500 Hz, 1000 Hz, and 2000 Hz.

A Track Worker must be able to hear instructions from a foreman and team members; verbal warnings; the operation of power tools, the portable emergency alarm box as a rail is being powered on; and the whistle signal. A Track Worker must also be able to hear and identify a flagman's whistle and the location of an oncoming train.

A Track Worker must be able to communicate with coworkers and supervisors to give and receive instructions, orders, and information. A Track Worker must be able to communicate in noisy environments to avoid hazardous conditions, including proximity to the live third rail and oncoming trains.

As to hearing sensitivity/discrimination, a Track Worker must demonstrate a hearing sensitivity on pure tone audiometric testing not worse than an average hearing loss in the better ear greater than 40 dB at 500 Hz, 1000 Hz, and 2000 Hz. As to auditory attention (hearing noise), a Track Worker must either (a) demonstrate a hearing sensitivity on pure tone audiometric testing not worse than 40 dB in each ear at each frequency: 500 Hz, 1000 Hz, 2000 Hz and 3000Hz or (b) have an audiometric speech discrimination test performed by an audiologist with at least 70% reception in one ear at an intensity of no greater than 65dB. As to auditory attention, the use of a hearing aid to meet these qualifications is not permitted unless the applicant can demonstrate that they can function well in the actual job environment. As to sound localization (also referred to as hearing localization), a Track Worker must demonstrate a hearing sensitivity on pure tone audiogram testing not worse than 40dB in either ear at each frequency: 500 Hz and 1000 Hz.

6.      Whether DCAS requires that the written exams it administers be in English and may not be interpreted into any other language.

Plaintiff's contention: The Regulations do not set a minimum ability to understand or be understood in English. Nor was Mr. Frilando tested on his ability to communicate in English despite his emails with various representatives of Defendants. As is plain from those email exchanges, Mr. Frilando has some ability to understand or be understood in English.

For at least one area of the application process, DCAS states that an "interviewer must be alert to [a] candidate's ability to understand and be understood in English. A candidate who seems to lack these abilities should be referred to take a qualifying English oral test. However, reasonable accommodation should be provided for a candidate who has a disability which prevents or impedes communication               in                    English."[3]

https://www1.nyc.gov/assets/dcas/downloads/pdf/reports/200_2.pdf.

The Protocols state that "[w]here appropriate, a reasonable accommodation will be provided for a person with a disability to enable him or her to take the examination . . . ."

Likewise, under the NYCT's Equal Employment Opportunity Policy, NYCT ensures that "in accordance with applicable law," it will "provide reasonable accommodations to qualified applicants . . . with disabilities to enable them to participate fully in the terms, conditions and privileges of employment."

Defendants' contention: DCAS requires that its written exams are in English and does not permit the exams to be interpreted into any other language. Prepared in accordance with Local Law 30, DCAS's Language Access Plan states, "civil service exams and their notifications will

---

[3] *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (discussing judicial notice of "documents filed with governmental entities and available on their official websites," among other things), *cited by* Mem. & Order, ECF No. 66.

continue to be produced only in English, as the City requires job candidates hold a level of proficiency in the English language."

Further, the quotations in Plaintiff's contention are taken from a Personnel Service Bulletin applicable to candidates on eligible lists, meaning candidates who have already passed any required exam. Thus, the quotations are inapplicable to exams and the requirement that exams be in English. The bulletin is titled, "Qualifying English Oral Tests for Candidates on Eligible Lists." The first two sentences of the bulletin state, "To be hired from a civil service eligible list, a candidate for employment by the City of New York must be able to understand and be understood in English. This requirement is set forth in the General Examination Regulations and in each Notice of Examination."

      7.    Whether Mr. Frilando suffered any injury.

Plaintiff's contention: Mr. Frilando suffered emotional distress as a result of Defendants' discrimination, and his civil rights were violated under the city, state, and federal laws at issue. Civil-rights violations are inherently distressing. They inflict a "profound personal humiliation," *Powers v. Ohio*, 499 U.S. 400, 413 (1991), and "[a]s a matter of both common sense and case law, emotional distress is a predictable, and thus foreseeable, consequence of discrimination." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1199 (11th Cir. 2007). When a person like Mr. Frialndo is excluded from an aspect of public life, that discrimination "denigrates the dignity of the excluded" and "reinvokes a history of exclusion." *J.E.B. v. Alabama*, 511 U.S. 127, 142 (1994). Mr. Frilando need not provide medical testimony to support that fact. *See Broome v. Biondi*, 96 Civ. 0805 (RLC), 96 Civ. 2262 (RLC), 1997 U.S. Dist. LEXIS 17349, at *36 & *40 (S.D.N.Y. Nov. 4, 1997); *see also Lore v. City of Syracuse*, 670 F.3d 127, 177 (2d Cir. 2012) (recounting damages awards for emotional distress).

<u>Defendants' contention</u>:  Plaintiff suffered no injury. He applied for jobs knowing that he was not qualified for any of the jobs. He declined to take any of the exams that were prerequisites to obtaining the jobs. Plaintiff never sought or received counseling from any therapist or psychologist for any alleged emotional distress in connection with the alleged failure by Defendants to reasonably accommodate his disability.

## Rule 4(b)(v): Particularized Statement of Relief Sought

### <u>Plaintiff's Statement:</u>

Mr. Frilando seeks noneconomic compensatory damages for emotional distress under all claims: Title I of the Americans with Disabilities Act, 42 U.S.C. § 12117(a); the Rehabilitation Act, 29 U.S.C. § 794a; the New York State Human Rights Law, N.Y. Exec. Law § 297(9); and the New York City Human Rights Law, N.Y.C. Admin. Code. § 8-502(a). As for the amount, Mr. Frilando intends to leave the determination of emotional-distress damages solely to the Court.

Alternatively, under the New York City Human Rights Law, Mr. Frilando seeks compensatory damages even his "only injury is the deprivation of a right granted or protected by [that statute]," N.Y.C. Admin. Code § 8-502(h)(2), because he is "claiming to be a person aggrieved by an unlawful discriminatory practice as defined [by the statute]," *id.* § 8-502(a).

Under all claims, Mr. Frilando seeks injunctive and declaratory relief, such as policy and procedure changes, to ensure that Defendants comply with their obligations to deaf and hard-of-hearing applicants or employees in accordance with city, state, and federal antidiscrimination laws. Specifically, if a deaf or hard-of-hearing applicant's primary language is American Sign Language ("ASL"), that applicant should be entitled an ASL interpreter for not only oral or written instructions but also the written questions and answers.

Under all claims, Mr. Frilando seeks attorney's fees.

**Defendants' Statement:**

Defendants deny that Mr. Frilando is entitled to any relief. Defendants seek judgment in their favor on all of Mr. Frilando's claims, as well as costs and attorneys' fees.

**Rule 4(b)(vi): Witnesses.**

Mr. Frilando intends to call the following witnesses in this order:

1. Jennifer Garcia
2. Michael Nigro
3. Michael Quiery
4. Robert Alexander (not available on Monday, October 19)
5. Plaintiff Kenneth Frilando
6. Dr. Judy Shepard-Kegl (Defendants have moved *in limine* to preclude this witness's testimony)

Given section 4(b)(vi) of the Court's Individual Rules of Practice, Defendants intend to call the following witnesses in this order (the last three, should they be needed):

1. Jennifer Garcia
2. Michael Nigro
3. Michael Quiery
4. Robert Alexander (not available on Monday, October 19)
5. Plaintiff Kenneth Frilando
6. Dr. Laura Bienenfeld (not available on Thursday, October 22) (Plaintiff has moved *in limine* to preclude this witness's testimony)
7. Antonio Seda (Plaintiff has moved *in limine* to preclude this witness's testimony)

8. Joel Andrews (Plaintiff has moved *in limine* to preclude this witness's testimony)

**Rule 4(b)(vii): Exhibits**

Exhibit 1 is Plaintiff's exhibit list with Defendants' objections, and Exhibit 2 is Defendants' exhibit list with Plaintiff's objections. Unless otherwise noted, the Parties do not object to the admissibility or the authenticity of the exhibits.

**Rule 4(b)(viii): Final Estimate of Trial Length**

The Parties estimate three to four days for trial.

Respectfully submitted,

/s/ Andrew Rozynski
Andrew Rozynski, Esq.
David John Hommel, Esq.
**EISENBERG & BAUM, LLP**
24 Union Square East, Fourth Floor
New York, NY 10003
Main: (212) 353-8700
arozynski@eandblaw.com
dhommel@eandblaw.com
*Attorneys for Plaintiff*

/s/ Beth L. Kaufman
Beth L. Kaufman, Esq.
Jeremy Miguel Weintraub, Esq.
**SCHOEMAN UPDIKE KAUFMAN &
GERBER LLP**
551 Fifth Avenue
New York, NY 10176
Main: (212) 661-5030
bkaufman@schoeman.com
jweintraub@schoeman.com
*Attorneys for Defendants*

**SO ORDERED:**

10/19/20
_____
Date

_____
The Honorable Jed S. Rakoff, U.S.D.J.

## CERTIFICATE OF SERVICE

I certify that on October 13, 2020. I electronically filed this document with the Clerk's Office using the CM/ECF system, which then sent a Notice of Electronic Filing to all registered attorneys.

Dated: October 13, 2020

Respectfully submitted,

Andrew Rozynski, Esq.
David John Hommel, Esq.
**EISENBERG & BAUM, LLP**
24 Union Square East, Fourth Floor
New York, NY 10003
Main: (212) 353-8700
Fax: (212) 353-1708
arozynski@eandblaw.com
dhommel@eandblaw.com
*Attorneys for Plaintiff*

**EXHIBIT 1 – Plaintiff's Exhibits with Defendants' Objections**

| Ex. No. | Description | Bates Number[1] | Defendants' Objections |
|---|---|---|---|
| 1 | April 20, 2017 Email and Others Between Plaintiff and Exam Unit (Regarding Request for Accommodations) | DEF37-39 | |
| 2 | June 1, 2017 Emails and Others between Plaintiff and Exam Unit (Regarding Request for Accommodations) | DEF273-276 | |
| 3 | June 5, 2017 Email and Others Between Plaintiff and Exam Unit (Regarding Request for Accommodations) | DEF302-303 | |
| 4 | June 8, 2017 Email and Others Between Plaintiff and Exam Unit (Regarding Request for Accommodations) | DEF304-306 | |
| 5 | November 21, 2017 Email and Others Between Plaintiff and Exam Unit (Regarding Request for Accommodations) | DEF28 | |
| 6 | March 1, 2018 Email Between Plaintiff and Exam Unit (Regarding Request for Accommodations) | DEF83 | |
| 7 | March 2, 2018 Email Among Exam Unit (Regarding Kenneth Frilando) | DEF322 | |
| 8 | March 11, 2018 Email and Others Between Plaintiff and Exam Unit (Regarding Request for Accommodations) | DEF314-317 | |
| 9 | April 2, 2018 Email and Others Between Plaintiff and Exam Unit (Regarding Request for Accommodations) | DEF46-51 | |
| 10 | August 13, 2018 Email Among Exam Unit (Regarding Makeup Exams for Kenneth Frilando) | DEF321 | |
| 11 | August 31, 2018 Email and Others between Plaintiff and Exam Unit (Regarding Response to Requests for Accommodations) | PLA1-13 | |
| 12 | Contract for ASL Interpreters Between the MTA New York City Transit and All Hands in Motion LLC | DEF200-214 | |

---

[1] Plaintiff has removed unnecessary zeroes from the Bates-numbering system for both Parties' production.

| | | | |
|---|---|---|---|
| 13 | 2011 Memorandum of Understanding Between the City of New York and the New York City Transit Authority | DEF234-248 | |
| 14 | 2018 Memorandum of Understanding Between the City of New York and the New York City Transit Authority | DEF261-269 | |
| 15 | General Examination Regulations by the Department of Citywide Administrative Services | DEF249-258 | |
| 16 | Special-Circumstances Guide by the Department of Citywide Administrative Services | DEF259-260 | |
| 17 | MTA New York City Transit's Instructions for Exam Accommodation Requests | DEF22-24 | |
| 18 | Unabridged Emails Between Plaintiff and Exam Unit or About Plaintiff's Requests for Accommodations | PLA1-16; PLA19-26; PLA29-30; DEF28-126; DEF270-322 | |
| 19 | Confirmation of Plaintiff's Test Dates | DEF25-27 | |
| 20 | Notices of Examination for the Underlying Positions | DEF5-21 | |
| 21 | Analysis Reports and Profiles on the Underlying Positions | DEF127-184 | |
| 22 | MTA New York City Transit's Equal Employment Opportunity Policy | DEF1-4 | |
| 23 | Plaintiff's Audiology Report | PLA32-34 | |
| 24 | Doctor's Note Regarding Additional Time for Plaintiff | DEF95 | |

**EXHIBIT 2 – Defendants' Exhibits with Plaintiff's Objections**

| Exhibit No. | Exhibit Description | Plaintiff's Objection |
|---|---|---|
| DEF EX. 1 | Audiological Report dated 1/27/10 (D 00085-87) | |
| DEF EX. 2 | NYCTA "SPECIAL CIRCUMSTANCES Directions for submission of requests" (D00022-24) | |
| DEF EX. 3 | DCAS "SPECIAL CIRCUMSTANCES Directions for Completing Application for Examination Form" (D 000259-60) | |
| DEF EX. 4 | Note dated 1/22/15 from Dr. Lawrence J. Martin (D 000312) | |
| DEF. EX. 5 | Emails between Plaintiff and Exams Unit, dated April 20-21, 2017 (P 00019-20) | |
| DEF. EX. 6 | Emails between Plaintiff and Exams Unit, Exams Makeups, and Jennifer Garcia, dated April 20 – June 1, 2017, with attachment (D 00032-35) | |
| DEF. EX. 7 | Emails among Plaintiff, Exams Unit, Exams Makeups, Jennifer Garcia, Michael Nigro and Michael Quiery, dated April 20, 2017 – June 1, 2017, with attachment (D 000273-76) | |
| DEF. EX. 8 | Emails among Jennifer Garcia, Michael Quiery, and Nikola Kapovic, dated June 1, 2017, with attachment (D 000291-96) | |
| DEF. EX. 9 | Email from Exams Makeups to Plaintiff, dated June 2, 2017 (D 00056) | |
| DEF. EX. 10 | Emails between Plaintiff and Exams Makeups, dated June 2-5, 2017 (D 00076-77) | |
| DEF. EX. 11 | Emails between Plaintiff and Exams Makeups, dated June 2-16, 2017 (D 00029-31) | |

| Exhibit No. | Exhibit Description | Plaintiff's Objection |
|---|---|---|
| DEF. EX. 12 | Emails between Plaintiff and Exams Makeups, dated Nov 21-29, 2017 (D 00028) | |
| DEF. EX. 13 | Emails between Plaintiff and Exams Unit, Exam Makeups, and Michael Nigro, dated March 1 – April 2, 2018 (D 000110-116) | |
| DEF. EX. 14 | Emails among Exams Unit, Michael Nigro, Nick Kapovic, Maria Casillo, Jennifer Garcia, and Plaintiff, dated March 1-12, 2018, with attachment (D 000314-18) | |
| DEF. EX. 15 | Emails among Jennifer Garcia, Minette Millington, and Nick Kapovic, dated April 26-27, 2018 (D 000319-20) | |
| DEF. EX. 16 | Email from Michael Nigro to Alexander Fisher and Sara Giller, dated August 13, 2018 (D 000321) | |
| DEF. EX. 17 | Email from Exams Unit to Plaintiff, dated Aug 17, 2018 (P 0004) | |
| DEF. EX. 18 | Purchase Order between NYCTA and All Hands in Motion, dated August 16, 2018 (D 000200-14) | |
| DEF. EX. 19 | Emails between Michael Nigro, Exam Makeups and Plaintiff, March 1 – August 31, 2018 (P 0001-13) | |
| DEF. EX. 20 | 2011 Memorandum of Understanding Between the City of New York (Acting Through its Department of Citywide Administrative Services) and the New York City Transit Authority (D 000234-48) | |

| Exhibit No. | Exhibit Description | Plaintiff's Objection |
|---|---|---|
| DEF. EX. 21 | 2018 Memorandum of Understanding Between the City of New York (Acting Through its Department of Citywide Administrative Services) and the New York City Transit Authority (D 000261-48) | |
| DEF. EX. 22 | Memorandum of Understanding between MTA New York City Transit and MTA Bus Company, dated January 2006 | |
| DEF. EX. 23 | Notice of Examination Train Operator Exam No. 7604 (D0005-10) | |
| DEF. EX. 24 | Notice of Examination Bus Operator, Exam # 7105 (D 00017-21) | |
| DEF. EX. 25 | Notice of Examination Track Worker, Exam No. 8600 (D 00011-16) | |
| DEF. EX. 26 | Job Analysis Report Train Operator, Exam No. 7604 (D 000154-78) | |
| DEF. EX. 27 | Job Analysis Report Bus Operator, Exam No. 7612 (D 000138-53) | |
| DEF. EX. 28 | Job Analysis Report Promotion to Track Worker, Exam No. 8704 Track Worker, Exam No. 8600 (D 000127-37) | |
| DEF. EX. 29 | Job Profile: Ergonomic Highlights (Bus Operator) (D 000179-80) | |
| DEF. EX. 30 | Job Profile: Ergonomic Highlights (Revenue Train Operator) (D 000181-82) | |
| DEF. EX. 31 | Job Profile: Ergonomic Highlights (Track Worker) (D 000183-84) | |
| DEF. EX. 32 | Chapter 4 "Hearing" from New York City Transit Medical Standards (D 000186-99) | |
| DEF. EX. 33 | April 10, 2017 admission letter for Train Operator Exam (D 00025) | |

3

| Exhibit No. | Exhibit Description | Plaintiff's Objection |
|---|---|---|
| DEF. EX. 34 | Nov 13, 2017 admission letter for Bus Operator Exam (D 00026) | |
| DEF. EX. 35 | March 1, 2018 admission letter for Track Worker Exam (D 00027) | |
| DEF. EX. 36 | EEO policy (D 0001-2) | |
| DEF. EX. 37 | EEO Program Summary (D0003-4) | |
| DEF. EX. 38 | Plaintiff's resume (P 00035-36) | **FRE 401 & 403** |
| DEF. EX. 39 | Plaintiff's Facebook page (Def. Ex. I from Plaintiff's deposition) | **FRE 401 & 403** |