IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---------------------------------------------------------

CHARLES HINE,

                Plaintiff,

       v.

PRINCE GEORGE'S COUNTY,
MARYLAND,

            Defendant.

---------------------------------------------------------

**Civ. No. 8:20-cv-02929-TDC**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Charles Hine ("Plaintiff") submits this Memorandum of Law in opposition to the motion of Defendant Prince George County, Maryland (the "County" or "Defendant") to dismiss or, in the alternative, for summary judgment (the "Motion").

The Court should deny Defendant's motion to dismiss in its entirety because Plaintiff's Proposed Amended Complaint[1] moots the motion. The Court should not covert the motion to dismiss into a summary judgment motion because the parties have not had an opportunity for discovery.

Regardless, despite the County's assertions, Plaintiff has sufficiently complied with the notice requirements set forth in the Maryland Local Government Tort Claims Act ("LGCTA"), and has sufficiently plead such compliance in his Proposed Amended Complaint. The cases cited by Defendant to support the contention that Plaintiff has not complied with the relevant notice requirement do not warrant any other conclusion. In any event, even if this Court were to find that Plaintiff did not strictly comply with the relevant notice requirement, Plaintiff's EEOC Charge substantially complied in that it provided sufficient notice to the County as to Plaintiff's claims and Defendant's potential liability. As such, Defendant's Motion should be denied with respect to Plaintiff's state law claims.

The Court should also reject Defendant's claim that it is not Plaintiff's employer and cannot be held liable for his claims. Plaintiff is a covered employee under Title I of the ADA and the

---

[1] Although Fed. R. Civ. P. 15(a)(1)(B) allows a party to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)," Plaintiff contemporaneously submits a motion for leave to amend its complaint pursuant to Fed. R. Civ. P. 15(a)(2) out of an abundance of caution, given that Plaintiff's pleading was technically amended by stipulation dated December 9, 2020 (Doc. 13) to dismiss defendant Prince George's County Fire and Emergency Medical Services Department from this action.

evidence clearly shows that Defendant is Plaintiff's employer. At the very least, this issue cannot

be decided before discovery and must be determined by a trier of fact.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

Facts 1-14:

> **Response:** Undisputed.

Fact 15: The County never received any Notice of Tort Claim pursuant to the provisions of the

Local Government Tort Claims Act ("LGCTA"), [Exhibit 4, Griffin Aff.].

> **Response:** Undisputed that a separate notice was not sent to Defendant. However,
> Plaintiff's EEOC Charge substantially complied in that it provided sufficient notice to
> Defendant within 180 days as to Plaintiff's claims and Defendant's potential liability.
> Defendant also had sufficient time to investigate, and responded to Plaintiff's claims.
> Courts in this Circuit have expressly held that such EEOC Charges of Discrimination are
> sufficient to satisfy the LGTCA's notice requirement.

Fact 16: Plaintiff does not allege in his Complaint that he complied with the provisions of the

LGCTA, nor does he mention the LGCTA in any way. (See generally ECF 1).

> **Response:** Plaintiff objects because his Proposed Amended Complaint pleads compliance
> with the LGCTA. *See* Am. Compl. ¶ 39.

Facts 17 – 23:

> **Response:** Plaintiff objects because no discovery has taken place in this case. Plaintiff
> requires discovery, depositions, and cross-examination of Defendant's affiant and staff to
> gather information that are necessary and essential to verify the facts. This is especially
> true because Defendant's February 13, 2019 letter denying Mr. Hine's volunteer firefighter
> position was "sent by the Prince George's County Office of Law on behalf of the Prince

George's County Fire & EMS Department (the 'Department') and Fire Chief Benjamin M. Barksdale." Ex. A at 9 (Exhibit 2). The letter made reference to Mr. Hine's "2017 application *to become a volunteer firefighter with the Prince George's County Fire & Emergency Medical Services Department and subsequent denial by the Department*." *Id.* (emphasis added). And it was Defendant who denied Mr. Hine's job application: "After careful review, the Department has determined that you do not meet the standards to safely perform the essential functions of the volunteer firefighter/EMT position." *Id.* at 9-10. Given Defendant's representation in the letter, Plaintiff is unable to understand the exact relationship between Defendant and the Morningside Volunteer Fire Company or who is the responsible party/employer in this situation. *See* Pl.'s Rule 56(d) declaration, Ex. B.

## ARGUMENT

I.   **DEFENDANT'S MOTION TO DISMISS IS MOOTED BY PLAINTIFF'S PROPOSED AMENDED COMPLAINT AND ITS ATTEMPT TO CONVERT THE MOTION TO DISMISS INTO A SUMMARY JUDGMENT MOTION IS INAPPROPRIATE BECAUSE NO DISCOVERY HAS TAKEN PLACE**

First, Plaintiff notes that Defendant's Motion is only a partial motion to dismiss or, in the alternative, a partial summary judgment motion, because Plaintiff's Rehabilitation Act claim and Title II claim—added in the ProposedAmended Complaint—are not premised on the employer-employee relationship between Defendant and Plaintiff. Rather, Plaintiff's claims are based on Defendant's adoption of policies, procedures, and practices—such as the National Fire Protection Association requirements—that categorically deny deaf individuals like Mr. Hine from becoming a volunteer firefighter in the County.

Second, Plaintiff has filed a Proposed Amended Complaint, and "[t]he filing of an Amended Complaint typically renders moot pending motions to dismiss the original complaint." *Verderamo v. Mayor & City Council of Balt.*, 4 F. Supp. 3d 722, 724 n.3 (D. Md. 2014). Plaintiff's

Proposed Amended Complaint addresses the issues raised by Defendant in its motion to dismiss. *See generally*, Am. Compl. Specifically, the Proposed Amended Complaint (1) pleads compliance with the LGCTA, (2) adds the Morningside Volunteer Fire Company as another defendant, and (3) adds a Title II of the ADA claim, which covers Defendant regardless of whether it is an employer of Plaintiff. *Id.* As such, Defendant's motion to dismiss is mooted.

The Court should also deny Defendant's summary judgment motion in the alternative because conversion of a motion to dismiss into a motion for summary judgment "is not appropriate where the parties have not had an opportunity for reasonable discovery." *E. I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 448-449 (4th Cir. 2011) (citing *Gay v. Wall*, 761 F.2d 175, 178 (4th Cir. 1985) ("Because Gay was not afforded an opportunity for reasonable discovery, the district court's treatment of the motion to dismiss as a motion for summary judgment was an abuse of discretion."). No discovery has taken place in this case and Plaintiff does not have adequate information that is necessary and essential to oppose Defendant's motion for summary judgment. Thus, the Court should not convert the motion to dismiss into a summary judgment motion. Plaintiff also submits a Federal Rule of Civil Procedure Rule 56(d) declaration as Exhibit B.

In an abundance of caution, however, Plaintiff will still address the issues raised in Defendant's motion. The Court must deny the motion in its entirety because (1) Plaintiff has sufficiently complied with the notice requirement of the LGCTA, and (2) Defendant is Plaintiff's employer.

## II.     PLAINTIFF HAS SUFFICIENTLY COMPLIED WITH, AND PLEAD COMPLIANCE WITH, THE NOTICE REQUIREMENT OF THE LGCTA

In Plaintiff's Proposed First Amended Complaint, dated January 25, 2021 ("Am. Compl."), Plaintiff asserts that he timely filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights

on June 12, 2019, regarding Defendant's unlawful discrimination against him in February 2019. Am. Compl., ¶ 36.  Plaintiff also pleads that this EEOC filing satisfies the notice requirement set forth in the Maryland Local Government Tort Claims Act ("LGTCA"), MD. Ann. Code, Cts. & Jud. Proc. §§ 5-301 *et seq.* Am. Compl., ¶ 39.

Defendant erroneously claims in its Memorandum of Law in support of the Motion ("Def.'s Mem.") that (1) Plaintiff's EEOC Charge failed to comply with the notice requirement of the LGTCA, and (2) Plaintiff failed to plead such compliance in its Complaint. Defendant's Mem., p. 9.  As an initial matter, Plaintiff's Proposed Amended Complaint properly pleads compliance with LGTCA. *See* Am. Compl., ¶¶ 36-40. Moreover, Plaintiff's timely EEOC Charge satisfies the notice requirement of the LGTCA because (1) the Charge provided the County notice of its potential liability within 180 days, thus within the notice period of the LGTCA; (2) the County not only received the notice, but investigated and responded to the claim; and (3) Plaintiff strictly or substantially complied with the provisions of the statute.

Courts interpreting the LGTCA have observed that the notice requirement is "intended to apprise a local government 'of its possible liability at a time when it could conduct its own investigation, *i.e.*, while the evidence was still fresh and the recollection of the witnesses was undiminished by time, 'sufficient to ascertain the character and extent of the injury and its responsibility in connection with it.'" *Rios v. Montgomery Cty., Md.*, 872 A.2d 1, at 14 (Md. Ct. App. 2005); *see also Faulk v. Ewing,* 808 A.2d 1262, 1272 (Md. Ct. App. 2002) (same); *Williams v. Maynard*, 754 A.2d 379, 385 (Md. Ct. App. 2000) (same).  It is well-settled that this notice requirement may be met either by "strict" or "substantial compliance" with the provisions of the LGTCA.  *See, e.g., Faulk*, 808 A.2d at 1272; *Hansen v. City of Laurel*, 996 A.2d 882, 891 (Md. Ct. Spec. App. 2010) ("It is now well-established that claimants who fail to comply with [LGTCA]

section 5-304 notice requirements may prosecute their lawsuits so long as they have substantially complied with the notice statute").

Plaintiff's EEOC Charge alleges that "I applied to work for the above named employer as a Firefighter in the beginning of 2018. On March 8, 2018, I was informed that I was not selected for the position because I did not meet the standards set forth by the company due to a Failed medical examination (Hearing Loss). I appealed the decision twice. On February 13, 2019, I received a final notification that I could not be a Firefighter." (Defendant's Mem., Ex. 2, p. 1.) The Charge also alleges that "I was told that I do not meet the standards to safely perform the essential functions of the position," and that "I believe that I have been denied hire because of my disability, in violation of the Americans with Disabilities Act Amendments Act of 2008." *Id.* This Charge clearly provided the County with timely notice of its potential liability for discrimination against him, for the exact same conduct underlying Plaintiff's state claims that the County seeks to dismiss here. Moreover, not only did the Charge provide the County with notice of the full facts and circumstances of Plaintiff's claims, but the County fully investigated the claims and responded through a detailed Position Statement addressed to the Maryland Commission on Civil Rights, a copy of which is annexed hereto as Exhibit A. In this Position Statement, the County addresses each and every of Plaintiff's allegations line-by-line, responding to each allegation with its own detailed version of the facts and events at issue. *See* Ex. A. At the end of the Position Statement, the County concludes that it "denies the charge of discrimination as to disability under Title VII and the ADA in its entirety. . . . [and] has fully complied with the mandates of the ADA under Title VII" regarding Plaintiff. Ex. A, at 5. As set forth in more detail below, Plaintiff's state law claims are to be interpreted consistently with federal anti-discrimination statutes, particularly Title VII of the Civil Rights Act of 1964 ("Title VII"). As such, Plaintiff's EEOC Charge clearly and

sufficiently "apprise[d]" the County "of its possible liability at a time when it could conduct its own investigation" with respect to Plaintiff's state law claims.  *Rios*, 872 A.2d at 14.

This Court has regularly held that such EEOC Charges satisfy the LGTCA's notice requirement.  *See, e.g., Morey v. Carroll Cty.*, 2018 U.S. Dist. LEXIS, at \*55-59 (D. Md. May 3, 2018) ("the EEOC Charge provided defendants with 'requisite and timely notice of facts and circumstances giving rise to the claim,'" the critical requirement to establish substantial compliance" with LGTCA) (citation omitted); *Taylor v. Anne Arundel Cty.*, 2015 U.S. Dist. LEXIS 2215, at \*39-40 (D. Md. 2015) (plaintiff "substantially complied" with the LGTCA notice requirement by filing EEOC charge describing the facts of her employment discrimination claims, providing the county with sufficient notice of her claims); *Nelson v. City of Crisfield*, 2010 U.S. Dist. LEXIS 118360, at \*5-6 (D. Md. Oct. 5, 2010) (where plaintiff's EEOC notice was timely filed, and provided the facts underlying her claim, the nature of her claim, and her intent to sue, plaintiff substantially complied with the LGTCA); *Williams v. Bd. of Trs. of Frederick Cmty. Coll.*, 2004 U.S. Dist. LEXIS 203, at \*19 (D. Md. Jan. 8, 2004) (EEOC charge alleging ADA violations gave adequate notice of plaintiff's "parallel[]" claim for violation of equal protection rights).  As such, Plaintiff has complied with the notice requirements of the LGTCA, and Defendant's Motion should be denied with respect to this issue.

The cases purportedly supporting the County's position do not warrant a different result. In those cases, the Court dismissed a plaintiff's state claims because they were completely different claims from those asserted in the plaintiff's EEOC complaint, defeating the purpose of the notice requirement.  For example, in *Abdus-Shahid v. Mayor & City Council of Balt.*, 674 Fed. Appx. 267 at 273-274 (4th Cir. 2017), the Fourth Circuit held that a plaintiff's Charge of Discrimination filed with the EEOC did not strictly or substantially comply with the LGTCA's notice

requirements, where "the EEOC charge alleges religious discrimination in employment practices, in violation of Title VII, but it does not necessarily follow that claim adequately alerted the City to a potential claim based on violations of Maryland's constitutional guarantees of religious freedom and due process."  In *Luy v. Balt. Police Dep't*, 326 F. Supp. 2d 682, 693 (D. Md. July 16, 2004), this Court held that, even assuming that the plaintiff's Charges of Discrimination filed with the EEOC with respect to his employment discrimination claims "otherwise would meet the requirements for 'substantial compliance' with the LGTCA, there is no allegation nor any reason to believe that they would have provided any notice of [the plaintiff's] claim for defamation." Last, in *Hispanic Nat'l Law Enf't Ass'n NCR v. Prince George's Cty.*, 2020 U.S. Dist. LEXIS 32787, at *27-28 (D. Md. Feb. 25, 2020), this Court dismissed the plaintiff's claims where "the EEOC charges notified Defendants that certain Individual Plaintiffs were pursuing complaints of discriminatory and retaliatory conduct in violation of federal statutes in an administrative proceeding, but they did not notify the County that it may be subject to indemnifying its employees based on common law tort claims filed in court." In the only other case cited by the County in which an EEOC Charge of Discrimination was held not to have complied with the LGTCA's notice requirement, the court dismissed the plaintiff's claims on procedural grounds only; because plaintiff sent his notice to the City Administrator, rather than the City Attorney, as required by LGTCA § 5-304(c)(2).  *See Hansen*, 996 A.2d at 891.

Here, Plaintiff's state law claims are based on state disability employment discrimination statutes, and the same facts and claims of workplace discrimination as the ADA claim referenced in Plaintiff's EEOC Charge.  Importantly, Plaintiff's state law claims, brought under the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601, et seq. (1984, 2014 Repl. Vol.) and Prince George's County Code, Md. ("PGCC") § 2-185, et seq., are state

analogues of the ADA.  *See McCullough v. Prince George's Cty.*, No. AW-08-515, 2010 U.S. Dist. LEXIS 16450, at *13 (D. Md. Feb. 24, 2010) ("The Maryland Fair Employment Practices Act and the Prince George's County Code have substantially identical provisions to the ADA statute.") (citation omitted); *Nelson-Rogers v. Permanente*, No. GJH-17-3326, 2020 U.S. Dist. LEXIS 32335, at *21 (D. Md. Feb. 25, 2020) ("FEPA, as the Maryland state analogue to federal anti-discrimination statues, prohibits substantially the same conduct as the ADA."); *Johansson v. Prince George's Cty. Pub. Schs.*, No. DKC 13-2171, 2014 U.S. Dist. LEXIS 91667, at *32 (D. Md. July 7, 2014) ("The relevant sections of the Prince George's County Code are interpreted as analogous to the ADA.") (citations omitted). Defendant was timely notified of Plaintiff's injury and of the facts of his complaint, and had sufficient time to investigate and respond to Plaintiff's claims.  As set forth above, courts in this Circuit have expressly held that such EEOC Charges of Discrimination are sufficient to satisfy the LGTCA's notice requirement.

Because (1) Plaintiff's EEOC Charge provided the County with notice of its potential liability to Plaintiff under federal law and analogous state statutes, within the notice period of the LGTCA, (2) the Charge provided the County with not only an opportunity to investigate and respond, it did investigate and respond, (3) the Charge at least substantially complied with the notice requirement of the LGTCA, and (4) Plaintiff sufficiently plead such compliance in its Proposed Amended Complaint, Defendant's Motion should be denied with respect to Plaintiff's state law claims.

III.   **DEFENDANT IS LIABLE UNDER TITLE II OF THE ADA AND IS PLAINTIFF'S EMPLOYER UNDER TITLE I OF THE ADA**

Defendant claims that it "is not the employer of the Plaintiff and it cannot be held liable for any of Plaintiff's claims." Def.'s Mem. at 2. This is simply not true.[2]

First, Plaintiff's Proposed Amended Complaint adds a Title II of the ADA claim against Defendant. *See* Am. Compl. ¶¶ 56-75. Title II applies to Defendant because it is a public entity as defined in the ADA. 42 U.S.C. § 12131; 28 C.F.R. 35.104; *see also* U.S. Dep't of Justice, Settlement Agreement Between The United States Of America And Prince George's County, Maryland, And Prince George's County Fire Department, ¶1, https://www.justice.gov/crt/settlement-agreement-between-united-states-america-and-prince-georges-county-maryland-and-prince.

Thus, Defendant is liable regardless of whether it is an employer of Plaintiff or not.

Second, as explained below, Title I of the ADA covers Defendant because it is Mr. Hine's employer and because Mr. Hine is an employee under the ADA.[3]

## A. Mr. Hine is an employee under the ADA

The Fourth Circuit and this Court have long held that a volunteer who does not receive direct compensation can establish an employment relationship if he receives various benefits that are "indirect but significant remuneration." *Haavistola v. Cmty. Fire Co.*, 6 F.3d 211, 219-221 (4th Cir. 1993). In *Haavistola*, the Fourth Circuit considered whether a volunteer firefighter in Maryland was an employee covered under Title VII and the ADEA. *Id.* at 220-221. As a volunteer, the plaintiff did not receive any direct compensation, but received other benefits under Maryland statutes, such as a state-funded disability pension; survivors' benefits for dependents; scholarships

---

[2] Even if the Court agrees with Defendant, Plaintiff's Rehabilitation Act and Title II of the ACA claims survive because they are not premised on the employer-employee relationship between Defendant and Plaintiff. *See* supra Argument I.

[3] The analysis of whether Mr. Hine and Defendant are covered by Title I of the ADA equally applies to Mr. Hine's FEPA and Prince George's County Code claims because "[t]he Maryland Fair Employment Practices Act and the Prince George's County Code have substantially identical provisions to the ADA statute." *McCullough*, 2010 U.S. Dist. LEXIS 16450, at *13.

for dependents upon disability or death; bestowal of a state flag to family upon death in the line of duty; benefits under the Federal Public Safety Officers' Benefits Act when on duty; group life insurance; tuition reimbursement for courses in emergency medical and fire service techniques; coverage under Maryland's Workers Compensation Act; tax-exemptions for unreimbursed travel expenses; the ability to purchase a special commemorative registration plate; and access to obtain certification as a paramedic. *Id.* at 221. The Fourth Circuit reversed the district court's grant of summary judgment for the defendant because it was improper to determine as a matter of law that such benefits were insufficient to make the plaintiff an employee. *Id.* The court found that it was a disputed question of fact whether the benefits received "represent[ed] indirect but significant remuneration . . . or inconsequential incidents of an otherwise gratuitous relationship." *Id.* at 222.

Following *Haavistola*, this Court has repeatedly found that a volunteer who receives various fringe benefits can be considered an employee. *See Finkle v. Howard Cnty. Md.*, 12 F. Supp. 3d 780, 784-86 (D. Md. 2014) (finding that the plaintiff—a volunteer auxiliary police officer—was an employee for purposes of Title VII because of the significant remuneration benefits available upon injury or death); *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 410 (D. Md. 2015) ("[This Court] cannot find, as a matter of law, that the 'significant remuneration benefits available upon injury or death' Williams would have received as a volunteer EMT are insufficient to bring her under the ambit of Title VII."); *Price v. Grasonville Volunteer Fire Dep't*, No. ELH-14-1989, 2014 U.S. Dist. LEXIS 178098, at *30-32, (D. Md. Dec. 29, 2014) (finding that the plaintiff—a volunteer firefighter—may be a covered employee by listing the benefits available to him under Maryland law); *McCall v. Water Witch Fire Co.*, No. JKB-18-2921, 2019 U.S. Dist. LEXIS 83879, at *8 (D. Md. May 17, 2019) (finding that the plaintiff—a volunteer member of the defendant fire company—"plausibly alleged that he was an 'employee'

under Title VII" because volunteer members "do receive a number of benefits in the form of insurance, pension, tax credits and other benefits in return for their service."); *Tyndall v. Berlin Fire Co.*, No. ELH-13-02496, 2015 U.S. Dist. LEXIS 92999, at *64-65 (D. Md. July 16, 2015) (finding that there is an issue of fact on whether the plaintiffs—volunteer firefighters—who received benefits similar to the plaintiff in *Haavistola* would be considered employees); *but see Evans v. Wilkinson*, 609 F. Supp. 2d 489, 493 (D. Md. 2009) (finding that a volunteer EMT who was eligible for benefits unrelated to injury or death only upon meeting various conditions was not a covered employee under Title VII).

Even the EEOC has concluded that under the ADA, "an individual may be considered an employee of a particular entity if, as a result of volunteer service, s/he receives benefits such as a pension, group life insurance, workers' compensation, and access to professional certification, even if the benefits are provided by a third party. The benefits constitute 'significant remuneration' rather than merely 'inconsequential incidents of an otherwise gratuitous relationship.'" 2 Equal Employment Opportunity Commission, Compliance Manual § III(A)(1)(c) (2000) (citing *Pietras v. Board of Fire Comm'rs*, 180 F.3d 468, 473 (2d Cir. 1999); *Haavistola*, 6 F.3d 211 at 222).

Here, absent Defendant's unlawful conduct, Mr. Hine would have received significant benefits under Maryland and Prince George's County laws, such as disability benefits, *see* Md. Code Ann., Pub. Safety § 7-202 (2003 Repl. Vol., 2010 Supp.); survivor benefits, *see* Md. Code Ann., Pub. Safety § 7-203, Prince George's County Code §§ 11-327, 11-329 (2017); scholarships for dependents upon disability or death, *see* Md. Code Ann., Pub. Safety § 7-204; certain federal benefits under the Federal Public Safety Officers' Benefits Act, *see* Md. Code Ann., Pub. Safety § 7-205; group insurance for death benefits, disability benefits, medical expenses benefits, family assistance, and optional auxiliary and/or community volunteer coverage, *see* Prince George's

County Code § 11-327 (2017), James E. McClelland Sr., Aff. ¶ 21, ECF No. 14-4; tuition reimbursement for courses related to fire services or emergency medical technology, *see* 2013 Md. Laws 503; workers' compensation, *see* Md. Code Ann., Lab. & Empl. 9-234 (2008 Repl Vol., 2010 Supp.), James E. McClelland Sr., Aff. ¶ 21, ECF No. 14-4; tax exemptions, *see* Md. Code Ann., Tax-Gen. §§ 10-207, 10-208 (2010 Repl. Vol., 2011 Supp.), Md. Code Ann., Tax-Prop. § 7-209 (1994); the ability to purchase a commemorative license registration plate for a private vehicle without paying certain fees, *see* Md. Code Ann., Transp. § 13-618 (2009 Repl Vol., 2010 Supp.); and free training, live-in program, tuition reimbursement, Length of Service Awards Program, and a $4,000 tax credit. *See* Benefits, *Morningside Volunteer Fire Company*, https://www.morningsidevfd27.com/recruitment/benefits/. *See also Haavistola*, 6 F.3d 211 at 222; *Price*, 2014 U.S. Dist. LEXIS 178098, at *31 (listing the benefits available to a volunteer firefighter under Maryland law); *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 984 F. Supp. 367, 370 (D. Md. 1997) (same); James E. McClelland Sr., Aff. ¶ 21, ECF No. 14-4 ("The Worker's Compensation coverage provided for volunteer members with County funds, as well as the line of duty disability and death benefits described in County Code §11-324, are provided for volunteer members."). Not only are Mr. Hine's benefits almost identical to the benefits enumerated in *Haavistola* and its progeny, but his benefits are even greater because of the additional benefits provided by Prince George's County and the Morningside Volunteer Fire Company. *See* Prince George's County Code §§ 11-327—11-329 (2017). Thus, an employee-employer relationship can be established for Mr. Hine's volunteer firefighter position.

Defendant attempts to mislead the Court by presenting *Evans v. Wilkinson* as a binding Fourth Circuit decision. Def.'s Mem. at 11. ("The Fourth Circuit again looked at volunteer personnel in the realm of Title VII in *Evans v. Wilkinson* . . . ."). However, *Evans* was a district

court case. Further, this Court has repeatedly found that *Evans* does not apply in situations like Mr. Hine's. *See Williams*, 86 F. Supp. 3d at 410 ("These types of benefits [disability, death, and survivor's benefits] were not at issue in *Evans* — although they were in *Haavistola*. *Evans* is therefore distinguishable and the Court will follow the Fourth Circuit's pronouncements in *Haavistola*, as it must."); *Finkle*, 12 F. Supp. 3d at 786 (distinguishing *Evans* because the plaintiff "would immediately have been eligible for and received certain benefits—in particular 'significant remuneration benefits available upon injury or death.'"); *Price*, 2014 U.S. Dist. LEXIS 178098, at *31 (distinguishing *Evans* by listing the benefits available to a volunteer firefighter under Maryland law and that "[t]his package of benefits is largely comprised of 'line-of duty' benefits available upon injury or death and is comparable to the ones at issue in *Haavistola*."); *McCall*, 2019 U.S. Dist. LEXIS 83879, at *8 (distinguishing *Evans* because the plaintiff received "a number of benefits in the form of insurance, pension, tax credits and other benefits in return for their service.").

In *Evans*, Judge Titus found that a volunteer EMT, who received no salary but did enjoy certain indirect benefits, was not a covered "employee" under Title VII. 609 F. Supp. 2d at 497. In particular, the plaintiff was eligible for (1) a Length of Service Program that provided volunteers who had reached the age of 55 and completed at least 20 years of certified active volunteer service with a monthly payment of $125 for the rest of their life; (2) a first-time homeowner's assistance program that provided eligible volunteers with up to $12,500 toward the purchase of their first home; and (3) a scholarship program for Volunteer Rescue Squad volunteers who satisfied the Length of Service Program requirements. *Finkle*, 12 F. Supp. 3d at 785-86 (citing *Evans*, 609 F. Supp. 2d at 494-96).

The same cannot be said here. As laid out above, Mr. Hine would have immediately received numerous benefits under Maryland and Prince George's County laws, including disability, death, and survivor's benefits. Again, this Court has repeatedly found that these types of benefits—disability, death, and survivor's benefits—"were not at issue in *Evans* — although they were in *Haavistola. Evans* is therefore distinguishable and the Court will follow the Fourth Circuit's pronouncements in *Haavistola*, as it must." *Williams*, 86 F. Supp. 3d at 410; *see also*, supra *Price*, 2014 U.S. Dist. LEXIS 178098, at *31; *McCall*, 2019 U.S. Dist. LEXIS 83879, at *8; *Finkle*, 12 F. Supp. 3d at 786. As such, Mr. Hine is a covered employee under the ADA.

## B. Defendant is an employer under Title I of the ADA

Defendant also erroneously claims that it is not Mr. Hine's employer according to the joint employment test in *Butler v. Drive Auto. Indus. Of America*, 793 F.3d 404 (4th Cir. 2015). Def.'s Mem. at 14-21.

However, it is inappropriate to resolve this issue before discovery at the motion to dismiss stage because the *Bulter* test is "'highly fact-specific' to allow 'for the broadest possible set of considerations in making a determination of which entity is an employer.'" *Lee v. Mattis*, No. PX 17-2836, 2018 U.S. Dist. LEXIS 118719, at *25 (D. Md. July 17, 2018) (citing *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 727-28 (D. Md. 2013) ("[T]he precise contours of an employment relationship can only be established by a careful factual inquiry," and is "a fact-bound question . . . *not appropriate for resolution as a pure matter of law, before discovery*.") (emphasis added). Again, no discovery has taken place in this case. Plaintiff requires discovery, depositions, and cross-examination of Defendant's affiant and staff to gather information that are necessary and essential to oppose Defendant's contentions. *See* Pl.'s Rule 56(d) declaration, Ex. B. Thus, the Court should deny Defendant's motion to dismiss and also deny the conversion of the motion to

dismiss into a summary judgment motion regarding this issue. *See*, supra *Kolon Indus.*, 637 F.3d at 448-449; *Gay*, 761 F.2d at 178.

Regardless, even based on the information available to Plaintiff at the moment, all the *Butler* factors still weigh in favor of finding Defendant as Mr. Hine's employer. In *Butler*, the Fourth Circuit found that that "multiple entities may simultaneously be considered employers." *Butler*, 793. F.3d at 409-10. "Even if an entity is not a plaintiff's formal employer, it may be an 'employer' under the joint employer doctrine if it exercises sufficient control of the terms and conditions of the plaintiff's employment." *Evans v. Md. State Highway Admin.*, No. JKB-18-935, 2018 U.S. Dist. LEXIS 169866, at *12 (D. Md. Oct. 2, 2015) (citing *Butler*, 793. F.3d at 408). The Fourth Circuit reasoned that the joint employment doctrine "prevents those who effectively employ a worker from evading liability by hiding behind another entity, such as a staffing agency." *Butler*, 793. F.3d at 410. The factors to determine whether an entity is an employer are as follows:

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee discipline;
> (3) whether the putative employer furnishes the equipment used and the place of work;
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked for the putative employer;
> (6) whether the putative employer provides the individual with formal or informal training;
> (7) whether the individual's duties are akin to a regular employee's duties;
> (8) whether the individual is assigned solely to the putative employer; and
> (9) whether the individual and putative employer intended to enter into an employment relationship.

*Id.* at 414. While none of these factors are dispositive, the first three factors are the most important.

*Id.* at 414-15. The Fourth Circuit emphasized that "control remains the principal guidepost for determining whether multiple entities can be a plaintiff's joint employers." *Id.*

Here, all of Defendant's arguments that it is not liable or that it is not Mr. Hine's employer are contradicted by the fact that Defendant—not the volunteer fire company—was in complete and exclusive control of the hiring process and the ultimate decision not to hire Mr. Hine. *See* Ex. A at 6-15 (Exhibit 1-4). For example, Defendant's February 13, 2019 letter denying Mr. Hine's volunteer firefighter position was "sent by the Prince George's County Office of Law on behalf of the Prince George's County Fire & EMS Department (the 'Department') and Fire Chief Benjamin M. Barksdale." *Id.* at 9 (Exhibit 2). The letter made reference to Mr. Hine's "2017 application *to become a volunteer firefighter with the Prince George's County Fire & Emergency Medical Services Department and subsequent denial by the Department.*" *Id.* (emphasis added). And it was Defendant who denied Mr. Hine's job application: "After careful review, the Department has determined that you do not meet the standards to safely perform the essential functions of the volunteer firefighter/EMT position." *Id.* at 9-10. As such, there really is no dispute that Defendant had the complete and exclusive control in denying Mr. Hine's application. Thus, it is disingenuous for Defendant to now argue that it is not responsible for its decision or that it is not Mr. Hine's employer. Defendant's high degree of control over Mr. Hine's employment clearly demonstrates that it acted as Mr. Hine's employer. *See Milo v. CyberCore Techs., LLC*, No.: SAG-18-3145, 2020 U.S. Dist. LEXIS 5355, at *20 (D. Md. Jan. 13, 2020) (finding that the defendant "had exclusive authority to determine which persons could or could not work at the job site, and exhibited a high degree of control over [the plaintiff's] employment, thus acting as a joint employer in ordering her termination.").

The analysis of all the *Butler* factors warrants the same conclusion. As to the first factor, as shown above, Defendant had the complete and exclusive control in denying Mr. Hine's application. Defendant also admitted that it "has the authority to remove, restrict or terminate a

member's operational authority." James E. McClelland Sr., Aff. ¶ 31, ECF No. 14-4. Further, "[a]ll operational officers must meet certain criteria laid out in the General Orders and Prince George's County Code." *Id.* ¶ 6.

 As to the second factor, while volunteer fire companies remain as separate entities from Defendant, they are still instrumentalities of Defendant. *See* Prince George's County, Md., Code § 11-324(a) ("All existing nonprofit incorporated volunteer fire companies and/or rescue squads operating in Prince George's County are declared to be an instrumentality of Prince George's County . . . ."). Specifically,

> [Defendant's] fire chief is clearly in control and has the right to direct operations at the scene of any fire including specifying what types of equipment and what fire fighting methods should be used. Of course, any directions he gives may well pass through a chain of command, but he would remain as the person in control and ultimately responsible. In the interest of protecting the public safety by fighting fires by the most efficient means he might well prescribe the training required for persons in the chain of command such as chiefs and assistant chiefs of volunteer fire companies.

*Prince George's Cty. v. Chillum-Adelphi Volunteer Fire Dept., Inc.*, 275 Md. 374, 383-84, 340 A.2d 265, 271-72 (1975). Notably, Defendant also admitted that it has "authority over volunteer companies [] related to operational control, such as directing operations at the scene of an emergency, specifying the types of equipment and methods to use, training requirements and duties, and the manner of operation of fire apparatus," James E. McClelland Sr., Aff. ¶ 7, or that it could impose discipline "on volunteers, such as operational removals and restrictions, or remedial training." Def.'s Mem. at 16.

As to the third factor, Defendant admitted that it "pays to maintain and insure operational emergency vehicles" and that it "has control over what equipment and apparatus may be used in an operational capacity within its jurisdiction." Def.'s Mem. at 16. It also provides "personal

protection equipment ("PPE") for each operational firefighter." James E. McClelland Sr., Aff. ¶ 24, ECF No. 14-4.

As to the fourth factor, although volunteer firefighters are not paid, they are considered employees if they receive various fringe benefits under *Haavistola* and its progeny, as explained above.

The fifth factor is not applicable as Defendant denied Mr. Hine's application.

As to the sixth factor, Defendant admitted that it "has certain formal trainings for safety and equipment it provides that are made available to all operational personnel." Def.'s Mem. at 17.

As to the seventh factor, Defendant admitted that this factor is "satisfied in an operational aspect, as both volunteer and career firefighters, EMTs and paramedics all perform the same duties when operationally responding to an incident." Def.'s Mem. at 17.

As to the eighth and ninth factors, Mr. Hine's placement in the Morningside Volunteer Fire Company would have made him a part of Defendant's Fire & Emergency Medical Services Department, as admitted by Defendant in its letter to Mr. Hine: "Reference is made to your 2017 application *to become a volunteer firefighter with the Prince George's County Fire & Emergency Medical Services Department and subsequent denial by the Department*." Ex. A at 9 (Exhibit 2) (emphasis added). Further, as explained above, Mr. Hine is considered an employee in the Fourth Circuit because he would have received significant benefits.

As such, Defendant's various admissions actually support the finding that Defendant is Mr. Hine's employer under Title I of the ADA, which warrants a denial of Defendant's motion to dismiss. *See Lora v. Ledo Pizza Sys.*, No. DKC 16-4002, 2017 U.S. Dist. LEXIS 118474, at *19-20 (D. Md. July 27, 2017) ("The allegations in the amended complaint suggest that Ledo, acting

through Mr. Richards, may have had control over hiring and firing decisions (the first factor), day-to-day supervision (the second factor), and formal or informal training (the sixth factor). *At the motion to dismiss stage, these allegations are adequate*.") (emphasis added).

At the very least, again, it is inappropriate to resolve this issue before discovery because the *Bulter* test is "'highly fact-specific' to allow 'for the broadest possible set of considerations in making a determination of which entity is an employer.'" *Mattis*, 2018 U.S. Dist. LEXIS 118719, at *25 (citing *Murphy-Taylor*, 968 F. Supp. 2d at 727-28) ("[T]he precise contours of an employment relationship can only be established by a careful factual inquiry," and is "a fact-bound question . . . *not appropriate for resolution as a pure matter of law, before discovery*.") (emphasis added). Further, the issue of joint employment must be determined by a trier of fact. *See Gatebe v. Bridenstine*, No. 8:18-cv-00182-PX, 2018 U.S. Dist. LEXIS 202049, at *16-17 (D. Md. Nov. 29, 2018) ("Because a trier of fact could determine that NASA and USRA jointly employed Dr. Gatebe, summary judgment is denied on this ground."). Thus, the Court should deny Defendant's motion to dismiss and also deny the conversion of the motion to dismiss into a summary judgment motion.

## CONCLUSION

For these reasons, the Court should deny Defendant's motion to dismiss or, in the alternative, for summary judgment.

Dated: January 25, 2021                                   Respectfully submitted,

                                                         By:

Andrew Rozynski, Esq.
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708
arozynski@eandblaw.com

## CERTIFICATE OF SERVICE

On January 25, 2021, I electronically filed this document with the Clerk's Office using the

CM/ECF system, which then sent a Notice of Electronic Filing to all registered attorneys.


Dated: January 25, 2021                    Respectfully submitted,
                                           By:

                                           Andrew Rozynski, Esq.
                                           EISENBERG & BAUM, LLP
                                           24 Union Square East, Fourth Floor
                                           New York, NY 10003
                                           Main: (212) 353-8700
                                           Fax: (212) 353-1708
                                           arozynski@eandblaw.com

                                           *Attorneys for Plaintiff*